## UNITED STATES *v.* MANUFACTURERS NATIONAL BANK OF DETROIT, EXECUTOR.

No. 350.   Argued March 31, 1960.—Decided June 13, 1960.

*Assistant Attorney General Kramer* argued the cause for the United States. With him on the briefs were *Solicitor General Rankin, Assistant Attorney General Rice, Daniel M. Friedman, Harry Baum* and *L. W. Post.*

*Henry I. Armstrong, Jr.* argued the cause for appellee. With him on the brief was *Louis F. Dahling.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The question here is whether Section 811 (g)(2)(A) of the Internal Revenue Code of 1939 is constitutional as applied in this case. That section, the "payment of premiums" provision in the 1939 Code, requires inclusion

of insurance proceeds in the gross estate of an insured where the proceeds are receivable by beneficiaries other than the executor but are attributable to premiums paid by the insured.[1] Inclusion is required regardless of whether the insured retained any policy rights. However, if the insured possessed no "incidents of ownership" after January 10, 1941, the premiums paid by him before that date are excluded in determining the portion of the proceeds for which he paid the premiums.[2]

---

[1] These provisions were enacted, through amendment of § 811 (g), by § 404 (a) of the Revenue Act of 1942, 56 Stat. 798, 944. As amended, § 811 provides in pertinent part that:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

. . . . .

"(g) PROCEEDS OF LIFE INSURANCE.—

"(1) RECEIVABLE BY THE EXECUTOR.—To the extent of the amount receivable by the executor as insurance under policies upon the life of the decedent.

"(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. . . ."

[2] § 404 (c), Revenue Act of 1942, 56 Stat. 798, 945. Section 404 (c) provides that:

"The amendments made by subsection (a) [see note 1, *supra*] shall be applicable only to estates of decedents dying after the date of the enactment of this Act [October 21, 1942]; but in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall

The facts in the case are stipulated.   The insured died testate on July 15, 1954.   The taxpayer is his executor. On the estate tax return, the taxpayer included, as part of the gross estate, the proceeds of four insurance policies payable to the wife of the insured.   These policies were originally issued to the insured, but he divested himself of the policy rights by assigning them to his wife on December 18, 1936.   However, he continued to pay the premiums on the policies until he died.   After his death, the proceeds were retained by the insurer for the benefit of the family, pursuant to the provisions of a settlement option selected by the wife.

In auditing the return, the Revenue Service determined that only the portion of the proceeds attributable to premiums paid by the insured after January 10, 1941, should be included in his estate.[3]   Accordingly, the tax was adjusted and a refund was made.   The executor then filed a claim for refund of the rest of the tax attributable to the inclusion of the proceeds.   The executor claimed that because the decedent had divested himself of all interest in the policies in 1936, the tax constituted an unapportioned direct tax on property, invalid under

---

be excluded if at no time after such date the decedent possessed an incident of ownership in the policy."

January 10, 1941, was the effective date of a Treasury Regulation, T. D. 5032, 1941–1 Cum. Bull. 427, which provided for use of the "payment of premiums" test under § 811 (g) as it existed prior to the 1942 amendments, see note· 1, *supra*, regardless of whether the decedent retained any incidents of ownership.   The regulation also provided, however, that premiums paid by the decedent before its effective date were to be excluded if the decedent did not thereafter possess any incidents of ownership.

It should be noted that the "payment of premiums" test was abandoned in the 1954 Code, which reverted to the exclusive use of the "incidents of ownership" test. See 26 U. S. C. § 2042.

[3] See note 2, *supra*.

Article I, Sections 2 and 9, of the Constitution.[4] However, the Commissioner refused to allow the claim, and the present suit for refund followed. In the District Court, the executor added a claim that the tax is also invalid under the Due Process Clause of the Fifth Amendment "because it is retroactive and discriminatory in its operation."

The District Court sustained the taxpayer's contention that, as applied in this case, Section 811 (g)(2)(A) is unconstitutional. It held that because the decedent retained no incidents of ownership in the policies after 1936, "no transfer of the property herein sought to be included in the estate of this decedent occurred at the time of his death." The court concluded that the tax was therefore a direct tax on the proceeds themselves and could not be levied without apportionment.[5] 175 F. Supp. 291. The Government appealed directly to this Court under Sections 1252 and 2101 of Title 28, and we noted jurisdiction. 361 U. S. 880.

The first objection to the tax is that it is a direct tax—that is, that it is not a tax upon a transfer or other taxable

---

[4] Article I, § 2, provides in pertinent part that:

"Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers . . . ."

Article I, § 9, provides in pertinent part that:

"No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken."

[5] This result is in accord with *Kohl* v. *United States,* 226 F. 2d 381 (C. A. 7th Cir.), the reasoning of which the District Court "adopted" as its own. As the District Court recognized, *Kohl* is in conflict with *Estate of Loeb* v. *Commissioner,* 261 F. 2d 232 (C. A. 2d Cir.), affirming 29 T. C. 22; *Schwarz* v. *United States,* 170 F. Supp. 2; cf. *Colonial Trust Co.* v. *Kraemer,* 63 F. Supp. 866; *Estate of Baker* v. *Commissioner,* 30 T. C. 776.

event but is, instead, a tax upon property—which Congress cannot exact without apportionment.

This argument does not do justice to the evident intent of Congress to tax events, "as distinguished from [their] tangible fruits." *Tyler* v. *United States,* 281 U. S. 497, 502. From its inception, the estate tax has been a tax on a class of events which Congress has chosen to label, in the provision which actually imposes the tax, "the *transfer* of the net estate of every decedent." [6] (Emphasis added.) See *New York Trust Co.* v. *Eisner,* 256 U. S. 345. If there is any taxable event here which can fairly be said to be a "transfer" under this language in Section 810 of the 1939 Code, the tax is clearly constitutional without apportionment. For such a tax has always "been treated as a duty or excise, because of the particular occasion which gives rise to its levy." *Knowlton* v. *Moore,* 178 U. S. 41, 81; *New York Trust Co.* v. *Eisner, supra,* at 349.

Under the statute, the occasion for the tax is the maturing of the beneficiaries' right to the proceeds upon the death of the insured. Of course, if the insured possessed no policy rights, there is no transfer of any interest *from him* at the moment of death. But that fact is not material, for the taxable "transfer," the maturing of the beneficiaries' right to the proceeds, is the crucial last step in what Congress can reasonably treat as a testamentary disposition by the insured in favor of the beneficiaries. That disposition, which began with the payment of premiums by the insured, is completed by his death. His death creates a genuine enlargement of the beneficiaries' rights. It is the "generating source" of the full value of the proceeds. See *Schwarz* v. *United States,* 170 F. Supp. 2, 6. The maturing of the right to proceeds is therefore

---

[6] Compare § 201 of the Revenue Act of 1916, 39 Stat. 756, 777, with § 810 of the Internal Revenue Code of 1939, 53 Stat. 120. In the 1954 Code, the word "taxable" was substituted for the word "net" in this provision. 26 U. S. C. § 2001.

an appropriate occasion for taxing the transaction to the estate of the insured. Cf. *Tyler* v. *United States,* 281 U. S. 497, 503, 504.

There is no inconsistency between such a view of the taxable event and the basic definition of the subject of the tax in Section 810. "Obviously, the word 'transfer' in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must . . . at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another." *Chase National Bank* v. *United States,* 278 U. S. 327, 337.

It makes no difference that the payment of premiums occurred during the lifetime of the insured and indirectly effected an *inter vivos* transfer of property to the owner of the policy rights. Congress can properly impose excise taxes on wholly *inter vivos* gifts. *Bromley* v. *McCaughn,* 280 U. S. 124. It may impose an estate tax on *inter vivos* transfers looking toward death. *Milliken* v. *United States,* 283 U. S. 15. Surely, then, it may impose such a tax on the final step—the maturing of the right to proceeds—in a partly *inter vivos* transaction completed by death. The question is not whether there has been, in the strict sense of the word, a "transfer" of property owned by the decedent at the time of his death, but whether "the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result . . . ." *Tyler* v. *United States, supra,* at 503.

Therefore, this tax, laid on the "ripening," at death, of rights paid for by the decedent, is not a direct tax within the meaning of the Constitution. Cf. *Chase National Bank* v. *United States, supra; Fernandez* v. *Wiener,* 326

U. S. 340; *Tyler* v. *United States, supra; United States* v. *Jacobs,* 306 U. S. 363.[7]

Further objections to the statute as applied in this case are predicated on the Due Process Clause of the Fifth Amendment.

It is said that the statute operates retroactively. But the taxable event—the maturing of the policies at death—occurred long after the enactment of Section 811 (g)(2)(A) in 1942. Moreover, the payment of all but a few of the premiums in question occurred after the effective date of the statute, and those few were paid during the period after January 10, 1941, when regulations gave the insured fair notice of the likely tax consequences. See T. D. 5032, 1941–1 Cum. Bull. 427.[8] Therefore, the statute cannot be said to be retroactive in its impact. It is not material that the policies were purchased and the policy rights were assigned before the statute was enacted. The tax is not laid on the creation or transfer of the policy rights, and it "does not operate retroactively merely because some of the facts or conditions upon which its application depends came into being prior to the enactment of the tax." *United States* v. *Jacobs, supra,* at 367.

The taxpayer argues, however, that the enactment of the statute subjected the insured to a choice between unpleasant alternatives: "[H]e could stop paying the

---

[7] Our view of the nature of the taxable event here involved makes it unnecessary to discuss *United States* v. *Bess,* 357 U. S. 51, and other similar cases relied on by the District Court. Nor do we find it necessary to consider at length *Lewellyn* v. *Frick,* 268 U. S. 238, or its progeny. The Court in *Frick* did not reach the constitutional issue.

[8] We do not agree with the holding in *Kohl* v. *United States,* 226 F. 2d 381, that T. D. 5032 "transcended" § 811 (g) as it existed in 1941 and that it was therefore "illegal and void." T. D. 5032, in effect, construed the controlling language in the earlier statute—"taken out by the decedent," 53 Stat. 122—as meaning paid for by the insured. Such a construction was clearly not unreasonable.

premiums—in which case the policies would be destroyed; or, he could continue paying premiums—in which case they would be included in his estate." But when he gave away the policy rights, the possibility that he would eventually be faced with that choice was an obvious risk, in view of the administrative history of the "payment of premiums" test. See 1 Paul, Federal Estate and Gift Taxation, § 10.13. The executor should not complain because his decedent gambled and lost. And, while it may be true that the insured could have avoided the tax only at the price of a loss on an investment already made, that fact alone does not prove that the lawmakers did "a wholly arbitrary thing," or that they "found equivalence where there was none," or that they "laid a burden unrelated to privilege or benefit." *Burnet* v. *Wells*, 289 U. S. 670, 679. Without such a showing, it cannot be held that the tax offends due process.

*Reversed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.