Ella Shure CAHEN TRUST, Created under the Last Will and Testament of Nathan Shure, Deceased, by Abraham N. Levin and Newton N. Minow, as Trustees; Joseph N. Shure and Samuel Shure, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 58 C 1390.

United States District Court
N. D. Illinois.
Dec. 30, 1960.

Judgment Affirmed July 19, 1961.
See 292 F.2d 33.

Gottlieb & Schwartz by Benjamin M. Brodsky, Chicago, Ill., for plaintiff.

Robert Tieken, U. S. Atty., Chicago, Ill., for defendant.

MINER, District Judge.

This matter having been submitted to the Court on a stipulation of facts entered into by the parties, and the Court having read and considered the said stipulation, the pleadings filed herein, and the documents and exhibits pre-

1

sented by the parties, and the Court having read, heard and considered the briefs, memoranda and oral arguments submitted by counsel in support of their respective positions, and the Court being fully advised, the Court hereby enters its Findings of Fact and Conclusions of Law as follows:

Findings of Fact

1. This action arises under the Internal Revenue laws of the United States for the recovery of Federal Estate taxes and interest which the plaintiffs claim and which the defendant denies were illegally collected by the defendant. Said action is one of which this Court has original jurisdiction.

2. Nathan Shure died on July 11, 1952. An estate tax return was timely filed by the executors of his estate. Thereafter a deficiency in estate tax was proposed, based in part upon the inclusion in the gross estate of said Nathan Shure of a portion of the proceeds of certain policies of insurance on his life which are described below. This portion bore the same ratio to the total proceeds of the policies as the premiums paid after January 10, 1941 bore to the total premiums paid on the following life insurance policies:

| Insurer | Policy No. | Date Issued | Face Amount |
|---|---|---|---|
| Mutual Life Insurance Company of New York | 2132343 | Feb. 14, 1914 | $ 25,000 |
| Travelers Insurance Co. | 1314909 | Mar. 29, 1927 | 100,000 |
| Mutual Benefit Life Insurance Company | 1629153 (Reissued) | Feb. 15, 1934 Nov. 25, 1935 | 25,000 |
| Mutual Life Insurance Company of New York | 4,827,416 | Feb. 14, 1934 | 25,000 |
| Mutual Life Insurance Company of New York | 4,827,417 | Feb. 14, 1934 | 25,000 |
| Prudential Insurance Company of America | 8358962 | Feb. 14, 1934 | 75,000 |

3. The total asserted deficiency referred to in paragraph 2 of this stipulation, was in the amount of $212,431.44, plus interest thereon of $12,174.67, all of which was paid on behalf of the decedent's estate as follows:

| Date | Amount |
|---|---|
| October 26, 1954 | $ 24,569.62 |
| December 15, 1954 | 200,000.00 |
| November 6, 1956 | 36.49 |
| Total | $224,606.11 |

These payments were made to the Director of Internal Revenue for the District of Chicago, Chicago, Illinois. The person who was at that time Director of Internal Revenue at Chicago, Illinois, no longer held that office when this action was commenced.

4. In December, 1954, final distribution of the estate of Nathan Shure was made to the legatees under his will. On June 10, 1955, Samuel Shure and Joseph N. Shure, the executors of the aforesaid will, were discharged as such executors by order of the Probate Court of Cook County. The three plaintiffs herein are the surviving residuary legatees under the will of Nathan Shure and are entitled in equal shares to any refund determined to be owing by the defendant in this action.

5. On September 20, 1957, each of the plaintiffs herein filed a claim for refund with the Director of Internal

Revenue for the District of Chicago, Chicago, Illinois. Each of said claims sought the refund of ⅓ of $76,517.88 with interest. More than six months elapsed after the filing of the aforementioned claims for refund and prior to the commencement of this action and said claims have never been allowed or formally disallowed, in whole or in part, by the Secretary of the Treasury or his delegates down to the present time.

6. On August 20, 1935, Nathan Shure purchased the insurance policies described in paragraph 2 above from N. Shure Co., paying therefor $32,548.07, the then cash surrender value of said insurance policies. At the request and direction of Nathan Shure, the following endorsements in favor of the Nathan Shure Trust were executed and delivered with respect to the following policies:

| Insurer | Policy Number | Date of Endorsement |
| --- | --- | --- |
| Mutual Life Insurance Company of New York | 2132343 | November 21, 1935 (2 endorsements) |
| Travelers Insurance Co. | 1314909 | August 20, 1935 |
| Mutual Benefit Life Insurance Company | 1629153 | November 25, 1935 (with undated release of beneficiary) |
| Mutual Life Insurance Company of New York | 4,827,416 | September 24, 1935 (2 endorsements) |
| Mutual Life Insurance Company of New York | 4,827,417 | September 24, 1935 (2 endorsements) |
| Prudential Insurance Company of America | 8358962 | October 8, 1935 (2 endorsements) |

Nathan Shure filed a Federal gift tax return for the year 1935 in which he reported the gift of the aforesaid policies valued at the aforementioned purchase price to the Nathan Shure Trust and paid gift tax thereon. Under the United States Internal Revenue Code, a credit is. allowed against the Federal estate tax, for gift taxes paid on gifts of property the value of which property is required under any applicable provision of law to be included in the donor's taxable estate.

7. The Nathan Shure Trust is an irrevocable trust created on December 27, 1934, by Nathan Shure. At the time the Nathan Shure Trust was created, Nathan Shure transferred certain securities to the said trust which are described in the trust agreement. The income of the Nathan Shure Trust was derived from the said securities transferred to the trust by Nathan Shure, and from investments which were made with accumulated trust income. The securities transferred by Nathan Shure to the Nathan Shure Trust were transferred without consideration.

8. From August 20, 1935, down to the date of his death, Nathan Shure paid income tax on the portion of the Nathan Shure Trust income that was used to pay premiums upon the above described life insurance policies.

9. All of the premiums on the above described insurance policies prior to August 20, 1935, were paid by N. Shure Co. All of the premiums on said policies after August 20, 1935, down to July 11, 1952, the date of Nathan Shure's death, were paid by the trustees of the Nathan Shure Trust out of the income of that trust.

10. The income of the Nathan Shure Trust, the amount thereof used to pay premiums on the above described insurance policies, and the amounts distributed to the wife and children of Nathan Shure, the beneficiaries thereunder, were as follows, for the years 1935 through 1952, inclusive:

| Year | Income before Income tax | Life Insurance Premiums Paid | Distributions to Beneficiaries |
|---|---|---|---|
| 1935 | $ 19,532.26 | $ | $12,000.00 |
| 1936 | 61,969.10 | 17,807.50 | 12,000.00 |
| 1937 | 53,771.88 | 17,543.00 | 12,000.00 |
| 1938 | 25,521.96 | 17,622.75 | 12,000.00 |
| 1939 | 54,525.89 | 17,906.75 | 12,000.00 |
| 1940 | 127,294.51 | 17,828.00 | 12,000.00 |
| 1941 | 84,330.34 | 17,741.75 | 12,000.00 |
| 1942 | 57,383.68 | 22,157.50 | 12,000.00 |
| 1943 | 73,194.51 | 22,105.50 | 12,000.00 |
| 1944 | Additional Amount Distributed to Beneficiaries for Years 1935–1943 Inclusive | | 16,076.88 |
| 1944 | 79,889.76 | 22,026.00 | 16,931.88 |
| 1945 | 69,761.64 | 21,897.50 | 12,000.00 |
| 1946 | 72,249.91 | 21,848.50 | 12,612.44 |
| 1947 | 59,371.13 | 21,857.50 | 12,000.00 |
| 1948 | 104,300.34 | 21,791.00 | 29,254.68 |
| 1949 | 92,007.93 | 22,191.00 | 23,637.48 |
| 1950 | 94,716.44 | 22,135.00 | 24,290.89 |
| 1951 | 97,521.10 | 21,880.50 | 25,820.32 |
| 1952 | 113,359.59 | 21,818.00 | 45,770.80 |

11. At the times indicated, the outstanding voting shares of N. Shure Co. were owned as follows:

| | No. of Voting Shares Outstanding | No. of Voting Shares Owned by Nathan Shure | No. of Voting Shares Owned by Nathan Shure Trust |
|---|---|---|---|
| December 29, 1934 to November 30, 1936 | 873 | 873* | 0 |
| December 1, 1936 to April 30, 1940 | 1250 | 873* | 377 |
| May 1, 1940 to July 11, 1952 | 2250 | 1133* | 1117 |

12. The total proceeds (including post-mortem dividends and interest) of the aforesaid policies of insurance, namely, $276,936.38, were, upon the

* Including 5 shares owned by Samuel Shure and Joseph N. Shure, sons of Nathan Shure, and Yetta Shure, wife of Nathan Shure.

death of Nathan Shure, paid to the Nathan Shure Trust which, pursuant to certain of the endorsements mentioned in Paragraph 6 of this Stipulation of Facts, had been designated as beneficiary of all of said policies.

## Conclusions of Law

1. This Court has jurisdiction of the parties to and subject matter involved in this case.

2. The statutory provisions which govern the disposition of the issues raised by the parties are, in pertinent part, as follows:

(a) Section 811 of the Internal Revenue Code of 1939, as amended by Sec. 404(a) of the Revenue Act of 1942, 56 Stat. 798, 944 (26 U.S.C. 1952 ed. § 811):

"§ 811. Gross Estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States * * *

"(g) *Proceeds of Life Insurance.*

"(1) *Receivable by the executor.* —To the extent of the amount receivable by the executor as insurance under policies upon the life of the decedent.

"(2) *Receivable by other beneficiaries.*—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, * * *. For the purpose of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. * * * *"

* * * * * *

(b) Section 404 of the Revenue Act of 1942, c. 619, 56 Stat. 798, 944–945:

"§ 404. Proceeds of Life Insurance.

* * * * * *

"(c) *Decedents to Which Amendments Applicable.*—The amendments made by Subsection (a) shall be applicable only to estates of decedents dying after the date of the enactment of this Act; but in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall be excluded if at no time after such date the decedent possessed an incident of ownership in the policy."

3. The Treasury Department regulations which have relevance to the issues are, in pertinent part, as follows:

"(a) T.D. 5032, 1941—1 Cum. Bull. 427 (effective January 10, 1941):

"Article 25 * * * of Regulations 80, 1937 edition * * * amended as herein indicated.

"In lieu of the second paragraph of article 25, * * * the following is substituted:

"The term 'insurance' refers to life insurance of every description, including death benefits paid by fraternal beneficial societies operating under the lodge system. Insurance receivable by beneficiaries other than the estate is considered to have been taken out by the decedent

where he paid, either directly or indirectly, all the premiums or other consideration wherewith the insurance was acquired whether or not he made the application. Such insurance is not considered to have been so taken out, even though the application was made by the decedent, if no part of the premium or other consideration was paid either directly or indirectly by him. Where a portion of the premium or other consideration was actually paid by another and the remaining portion by the decedent, either directly or indirectly, such insurance is considered to have been taken out by the latter in the proportion that the payments therefor made by him bear to the total amount paid for the insurance.

\*　　\*　　\*　　\*　　\*　　\*

"Article 27 \* \* \* is amended to read as follows:

\*　　\*　　\*　　\*　　\*　　\*

"Art. 27. *Insurance receivable by other beneficiaries.*—The amount in excess of $40,000 of the aggregate proceeds of all insurance on the decedent's life not receivable by or for the benefit of his estate must be included in his gross estate as follows:

"(1) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) after January 10, 1941, the date of Treasury Decision 5032, and

"(2) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) on or before January 10, 1941, and with respect to which the decedent possessed any of the legal incidents of ownership at any time after such date or, in the case of a decedent dying on or before such date, at the time of his death.

\*　　\*　　\*　　\*　　\*　　\*

"(b) Regulations 105 promulgated under the Internal Revenue Code of 1939, as amended by T.D. 5239, 1943 Cum.Bull. 1081:

"Sec. 81.25. *Life Insurance.*—Section 811(g) provides for the inclusion in the gross estate of insurance on the decedent's life (a) receivable by or for the benefit of the estate (for which see section 81.26), and (b) receivable by other beneficiaries (for which see section 81.27).

"The term 'insurance' refers to life insurance of every description, including death benefits paid by fraternal beneficial societies operating under the lodge system.

\*　　\*　　\*　　\*　　\*　　\*

"§ 81.26. *Insurance In Favor of the Estate.*

\*　　\*　　\*　　\*　　\*　　\*

"§ 81.27. *Insurance Receivable by Other Beneficiaries.*—(a) *In case of decedent dying after October 24, 1942*—The regulations prescribed under this subsection (except as otherwise indicated herein or in subsection (b) of this section) are applicable only in case of decedents who died after October 21, 1942, the date of the enactment of the Revenue Act of 1942. In such cases, the amount of the aggregate proceeds of all insurance on the life of the decedent not receivable by or for the benefit of his estate must also be included in his gross estate as follows:

"(1) Such insurance (not includible under (2) of this subsection) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in the proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, and

"(2) Such insurance with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any person.

\*　　\*　　\*　　\*　　\*　　\*

"The amount receivable under a policy of insurance transferred, by

assignment or otherwise, by the decedent shall be includible under (1) of this subsection if the transfer constituted a gift to any extent under Chapter 4 of the Internal Revenue Code, or, in case the transfer was made at a time when such chapter was not in effect, would have constituted a gift to any extent under such chapter had it been in effect at such time. * * * "

■ 4. The premium payments made on all the policies here involved after January 10, 1941 by the trustees of the Nathan Shure Trust, were "paid * * * indirectly by the decedent" within the meaning of the provisions, as well as the legislative purpose, of said Section 811, as amended.

■ 5. The so-called "premium payment test" incorporated into Section 811 of the Internal Revenue Code of 1939 by Section 404 of the Revenue Act of 1942, as here applied to the said premium payments, is not unconstitutional as imposing an unapportioned direct tax prohibited by Article I, Sections 2 (clause 3) and 9 (clause 4) of the Constitution. See United States v. Manufacturers National Bank of Detroit, 1960, 363 U.S. 194, 80 S.Ct. 1103, 4 L.Ed.2d 1158.

6. The said application of the said "premium payment test" does not violate the due process requirements of the Fifth Amendment to the Constitution. *Ibid.*

7. That portion of the proceeds of the said policies which bears the same ratio to total proceeds as the premiums paid after January 10, 1941 bear to the total premiums paid on the said policies is properly includible in the gross estate of the decedent.

8. The plaintiff's claims for refund based on the alleged inapplicability and invalidity of the so-called "premium payment test" were properly disallowed by the Commissioner of Internal Revenue.

9. The complaint here must be dismissed on its merits.