**Edward P. FROHLICH, Executor of Estate of Edward Frohlich, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 20345.**

United States District Court
E. D. Michigan, S. D.

Nov. 24, 1962.

John W. Piester, Detroit, Mich., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Jerome Fink, Garrett H. Byrne and Solomon Fisher, Attys., Dept. of Justice, Washington, D. C., for defendant.

THORNTON, District Judge.

This is a tax refund case. Plaintiff seeks recovery of Federal estate taxes which he claims were erroneously assessed and paid. The amount sought to be recovered is $6,459.36.

The facts which furnish the background of this controversy are simple. They are contained in the stipulation of facts filed herein, a copy of which is attached to this opinion. Plaintiff is the executor of the estate of Edward Frohlich, deceased. In 1920 Edward Frohlich purchased a policy of insurance from the Guardian Life Insurance Company of America, face amount $25,000.00. In 1925 Edward Frohlich purchased a policy of insurance from the Fidelity Life Insurance Company, face amount $25,-000.00. In 1949 Edward Frohlich transferred, by gift, the ownership of these policies to Edward P. Frohlich, hereinafter referred to as the taxpayer. Premiums on these policies had been paid by Edward Frohlich up until the time of the transfer of ownership. In 1950 Edward Frohlich paid the applicable gift tax. The taxpayer made no premium

payments except for 1½ premiums on the Fidelity policy, credit for which he received in the estate tax computation. There is no dispute here relative to the payment of 1½ premiums by the taxpayer. As to both insurance contracts, the taxpayer converted them to paid-up contracts. At the time of the transfer to the taxpayer the Guardian policy had a cash surrender value of $18,771.23 and the Fidelity policy a cash surrender value of $17,320.25. Edward Frohlich, the transferor, died January 13, 1952. The issue here for determination is whether the Commissioner, in determining an estate tax deficiency, rightly included the proceeds of these two life insurance policies in the decedent's gross estate. The statute here applicable is Section 811(g) (2) (A) of the Internal Revenue Code of 1939, as amended, the pertinent parts of which read as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * *

"(g) Proceeds of life insurance

"(1) Receivable by the executor. To the extent of the amount receivable by the executor as insurance under policies upon the life of the decedent.

"(2) Receivable by other beneficiaries. To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *"

It is the contention of the taxpayer that the only proceeds includible are those representing the difference between the cash surrender value of the policies at the time of transfer and the total proceeds received as a result of the death of decedent. The taxpayer argues that the cash surrender value represents property transferred to him over which he thereby acquired control and dominion, that he might have taken the amounts of the cash surrender value in the form of cash and have done as he wished with it. In lieu of cashing in the policies for their cash surrender value he authorized the two insurance companies to convert the policies into paid-up policies.

The Government contends that the facts in this case are squarely within the provision of the statute which includes proceeds such as these as part of a decedent's gross estate. It relies upon the so-called "payment of premium" test, claiming that decedent paid the premiums, not the taxpayer. There is no problem here with relation to possessing or retaining any of the incidents of ownership. Decedent retained none subsequent to the transfer. The taxpayer received and retained all incidents of ownership.

The parties have filed thorough briefs with the Court and have also presented able argument in support of their respective contentions here. Both sides have indulged in considerable theorizing and review of tax law history (by the Government) and insurance concepts (by plaintiff). We think, however, that the resolution of this issue depends upon the answer to one simple question, albeit the answer is not as simple to arrive at as the question is to pose—Who paid the premiums on these insurance policies? The statute, in effect, makes this the test. It indicates clearly that no distinction is to be made between direct or indirect payments by the decedent. The taxpayer here contends that *he* paid the premiums directly (the cash surrender value constituting one lump sum payment for each policy) when he exercised his ownership over the policies and converted

them into paid-up contracts of insurance. The Government contends that *decedent* paid the premiums directly, having made premium payments from 1920 as to the Guardian policy and from 1925 as to the Fidelity policy until he transferred the policies in 1949. As a matter of theory we might well say that *both* the taxpayer and the Government are right. Certainly, even the taxpayer may not argue that the decedent did not in fact pay premiums from policy inception to policy transfer. Certainly, the Government cannot be heard to say that the taxpayer did not use his cash surrender privilege as payment for paid-up contracts of insurance. Viewing the contention of the taxpayer and that of the Government, each in its strongest and most favorable light, we are confronted with a paradox in attempting to determine, as we must, whether the "insurance under policies upon the life of the decedent" was purchased with premiums paid directly or indirectly by decedent. Fortunately for the Court, it is not necessary to indulge in speculation of either a theoretical or practical nature to come to a conclusion here. We believe that the Supreme Court has indicated with precision what approach is to be here adopted. We are aware of a number of decisions that we might proceed to dissect here in an effort to make various analogies and distinctions. None that we know of is directly in point apart from the one hereinafter referred to. The opinion of the United States Supreme Court handed down June 13, 1960 in the case of United States v. Manufacturers National Bank of Detroit, 363 U.S. 194, 80 S.Ct. 1103, 4 L.Ed.2d 1158, we consider to be controlling here. That case involved a somewhat similar situation but one where the insured continued to make payments after having transferred ownership of the policies to his wife. This fact was not considered by the court as controlling in its decision that the proceeds were part of the gross estate. The owner there was given full and complete ownership rights, including cash surrender privilege. She did not elect to take such cash but instead allowed her equity in the policy to continue. The continuation of payments by the insured however played no part in the rationale upon which the Supreme Court bottomed its theory of taxable transfer as being directly related to the maturing of a beneficiary's right to the proceeds, the death of the insured creating a genuine enlargement of the beneficiary's rights. The reasoning by which the Supreme Court arrived at its conclusion in Manufacturers is the reasoning we must adopt here. The argument of the taxpayer simply cannot stand in the face of the language in Manufacturers:

"Under the statute, the occasion for the tax is the maturing of the beneficiaries' right to the proceeds upon the death of the insured. Of course, if the insured possessed no policy rights, there is no transfer of any interest *from him* at the moment of death. But that fact is not material, for the taxable 'transfer,' the maturing of the beneficiaries' right to the proceeds, is the crucial last step in what Congress can reasonably treat as a testamentary disposition by the insured in favor of the beneficiaries. That disposition, which began with the payment of premiums by the insured, is completed by his death. His death creates a genuine enlargement of the beneficiaries' rights. It is the 'generating source' of the full value of the proceeds. See Schwarz v. United States, [D.C.] 170 F.Supp. 2, 6. The maturing of the right to proceeds is therefore an appropriate occasion for taxing the transaction to the estate of the insured. Cf. Tyler v. United States, 281 U.S. 497, 503, 504 [50 S.Ct. 356, 74 L.Ed. 991]." United States v. Manufacturers National Bank of Detroit, 363 U.S. 194, 198–199, 80 S.Ct. 1103, 1106.

The taxpayer here exercised his ownership rights to convert the policies. He had a right to receive the cash surrender value, but he did not exercise that right.

Instead he chose to exercise a different kind of ownership right and acquired the rights of a beneficiary after death, which rights were available to him by virtue of the 29 and 24 years of premium-paying by the decedent. This is the only conclusion that we can reach in the light of the teaching of Manufacturers.

The taxes were not erroneously assessed and collected. An appropriate judgment may be presented.

## STIPULATION OF FACTS

It is hereby stipulated and agreed by and between the parties hereto, by their respective attorneys, that the following facts may be taken as true and may be included by the Court in its findings of fact in this action, and that this action be submitted to the Court for decision and judgment on said facts:

1. This Court has jurisdiction over this cause of action pursuant to the provisions of Title 28 United States Code § 1346(a) (1).

2. Edward P. Frohlich, the Plaintiff herein, resides in the City of Detroit, County of Wayne, State of Michigan and is a citizen of said State of Michigan.

3. Edward Frohlich, the Decedent herein, died testate on January 13, 1952, and at the time of his death was a resident of the City of Detroit, County of Wayne, State of Michigan. Edward Frohlich's Will was admitted to probate on December 19, 1952 by the Probate Court for the County of Wayne, State of Michigan, and assigned File No. 396645. Said Probate Court on aforesaid day appointed Edward P. Frohlich, said Plaintiff, Executor of the Estate of Edward Frohlich. Edward P. Frohlich, said Plaintiff, is still the duly authorized and acting Executor in said probate proceedings and he has not been discharged by said Probate Court.

4. Edward P. Frohlich, Plaintiff herein, in his capacity as executor of the Estate of Edward Frohlich filed a Federal Estate Tax Return on Treasury Form 706 on April 13, 1953 on behalf of the estate of said Decedent Edward Frohlich with the District Director of Internal Revenue at Detroit, Michigan.

5. The Commissioner of Internal Revenue made an audit examination of said return filed by the Executor. As a result of such audit, it was determined that there was a deficiency in Federal Estate Taxes of the aforesaid estate in the amount of $5,907.31. In determining the amount of the deficiency, the Commissioner made numerous adjustments to the taxable estate as reported on the Federal Estate Tax Return. Among these adjustments was the inclusion in the gross estate of the proceeds of two contracts of life insurance as follows:

(a) The Guardian Life Insurance Company of America Policy No. 351739 (a copy of which has been submitted into evidence as Exhibit 1 at the Pre-Trial Hearing) in the amount of $21,-621.50.

(b) The Fidelity Mutual Life Insurance Company Policy No. 385041 (a copy of which has been submitted into evidence as Exhibit 2 at the Pre-Trial Hearing) in the amount of $19,335.53.

6. On March 23, 1920, there was issued to the Decedent Policy No. 351739 of The Guardian Life Insurance Company of America in the amount of $25,000. From the date of issue to January 26, 1949, the Decedent paid all premiums on this policy and retained all incidents of ownership relating thereto. On January 26, 1949, the Decedent transferred to his son, by gift, all incidents of ownership in this policy. Thereafter the Decedent paid no further premiums. The Decedent's son paid no premiums on this policy but after the assignment of the policy to him, he converted the contract to a paid-up contract in the amount of $21,295.00.

7. Exhibit 1–B is a true copy of a letter sent to The Guardian Life Insurance Company of America by Mr. Edward P. Frohlich on November 6, 1961. Exhibit 1–C is a true copy of the letter of reply from The Guardian Life Insurance Company of America to Mr. Edward P. Frohlich.

It is further stipulated that Mr. Edward Kerswig is Department Head, Policy Values Department, The Guardian Life Insurance Company of America, officer in charge of computing cash surrender values and if called as a witness by either party in this action Mr. Kerswig would testify: "The cash surrender value of policy number 351739 (Exhibit 1) on January 26, 1949 is $18,771.23 based on the premium paid from date of issue to January 26, 1949, with adjustment for a mortality refund on the unearned premium."

8. On October 10, 1925, there was issued to the Decedent Policy No. 385041 of The Fidelity Mutual Life Insurance Company in the amount of $25,000. From the date of issue to January 26, 1949, the Decedent paid all premiums on this policy and retained all incidents of ownership related thereto. On January 26, 1949, the Decedent transferred to his son by gift all incidents of ownership in this policy. Thereafter the Decedent paid no further premiums (having paid 24 premiums in his lifetime). The Decedent's son paid 1½ premiums after January 26, 1949.

9. Exhibit 2–B is a true copy of a letter sent to The Fidelity Mutual Life Insurance Company by Mr. Edward P. Frohlich on November 6, 1961. Exhibit 2–C is a true copy of the letter of reply from The Fidelity Mutual Life Insurance Company to Mr. Edward P. Frohlich.

It is further stipulated that Mr. Frederick R. Day is Supervisor, Policy Value Section, The Fidelity Mutual Life Insurance Company, officer in charge of computing cash surrender values and if called as a witness by either party in this action Mr. Day would testify: "If policy number 385041 (Exhibit 2) had been surrendered for its cash value on January 26, 1949 there would have been available a total of $17,320.25".

10. In determining the deficiency, the Commissioner only included in the estate that portion of the proceeds of the policy (Exhibit 2) which was attributable to the premiums paid by the Decedent. While Plaintiff acknowledges this statement accurately reflects the action taken by the Commissioner in computing the assessment in question, Plaintiff objects to the admissibility of this statement as evidence in this case on grounds of being irrelevant and immaterial.

11. The Decedent on March 14, 1950, filed a Gift Tax Return reporting the gifts of the Guardian Life Insurance Company contract and the Fidelity Life Insurance contract at their cash surrender value and paid the gift tax applicable thereto.

12. The value of the proceeds of the policies on the date of death of the Decedent were:

| Guardian Life Insurance Company of America | Fidelity Mutual Life Insurance Company |
| --- | --- |
| $23,621.50 | $20,544.00 |

13. The deficiency in taxes of $5,907.31 together with interest of $552.04 were paid by the Executor on May 2, 1955.

14. The Executor filed a Claim for Refund on April 19, 1957, in the amount of $6,459.36.

15. The Commissioner of Internal Revenue issued a Statutory Notice of Disallowance of said claim in full on August 13, 1958.

16. In the event that this Court determines that any amount is refundable to the Plaintiff, such amount shall be agreed upon by the parties, after a computation by the Internal Revenue Service, subject to the approval of the Court.