T.C. Memo. 1999-15

UNITED STATES TAX COURT

ESTATE OF ETHEL S. NOWELL, DECEASED,
DAVID A. PRECHEL, PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19056-96.                    Filed January 26, 1999.


<u>Alfred J. Olsen</u>, <u>James J. Rossie, Jr.</u>, <u>Stephen E. Silver</u>,
<u>Brad S. Ostroff</u>, and <u>Martha C. Patrick</u>, for petitioner.

<u>Rick V. Hosler</u>, for respondent.


MEMORANDUM OPINION

COHEN, <u>Chief Judge</u>:  This case is before the Court on cross-
motions for partial summary judgment under Rule 121.  Respondent
determined a deficiency of $342,688 in the Federal estate tax of
the estate of Ethel S. Nowell (decedent).  The issues for
decision are:  (1) Whether certain partnership interests

includable in the gross estate pursuant to section 2044 should be merged or aggregated with the partnership interests includable in the gross estate pursuant to section 2038, for valuation purposes; and (2) whether the interests in two partnerships passing at death should be valued for Federal estate tax purposes as "assignee" interests or as partnership interests.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Decedent died on December 22, 1992, a resident of Arizona. She was survived by Nancy Prechel, decedent's only child from a prior marriage, and by David A. Prechel (Mr. Prechel) and Diane D. Prechel (Ms. Prechel), decedent's only grandchildren. Mr. Prechel, a resident of Arizona, was decedent's personal representative when the petition in this case was filed.

Prior to January 18, 1991, decedent's assets consisted of her undivided one-half community property interest in certain publicly traded securities and real property. These assets were held in the Ethel S. Nowell Trust (the revocable trust) that was established on April 20, 1990. Mr. Prechel and Ms. Prechel were named as cotrustees of this trust.

Ansell L. Nowell (Mr. Nowell), decedent's predeceased husband, had established the A.L. Nowell Trust on April 20, 1990, contributing his one-half community property interest in the publicly traded securities and real estate to the trust and naming himself and Mr. Prechel as cotrustees. Upon Mr. Nowell's death on April 26, 1990, the A.L. Nowell Trust estate was distributed into three trusts: The Decedent's Trust, the A.L. Nowell Qualified Interest Trust-exempt (QTIP trust-exempt), and the A.L. Nowell Qualified Interest Trust-nonexempt (QTIP trust-nonexempt). The QTIP trust-exempt and the QTIP trust-nonexempt are referred to collectively herein as the QTIP trusts. Decedent and Mr. Prechel were cotrustees of each trust at decedent's death.

The property in the QTIP trusts was to be held for the benefit of decedent during her lifetime, with the remaining property interests to be distributed to Mr. Prechel and Ms. Prechel (in trust) at decedent's death. In Mr. Nowell's estate, the property that was held by the QTIP trusts was treated as qualified terminable interest property (QTIP property) pursuant to section 2056(b)(7). Accordingly, Mr. Nowell's executor made the appropriate election, and his estate claimed a marital deduction in the amount of $808,046 attributable to the QTIP property. The deduction was not disallowed for Federal estate tax purposes.

On January 18, 1991, decedent and Mr. Prechel formed the Prechel Farms Limited Partnership (PFLP). The general partnership interests were held by Mr. Prechel and the QTIP trust-nonexempt, while the limited partnership interests were held by the Decedent's Trust, the QTIP trust-exempt, and the revocable trust. The property that was contributed to the PFLP consisted of certain assets that were held by the trusts and a $500 contribution from Mr. Prechel. The following chart indicates the partnership status of each partner, the value of contributed property, and each partner's respective profits and loss percentage.

| Partners | Contributed Property* | Profit & Loss Percentage | General or Limited |
|---|---|---|---|
| Revocable trust | $1,386,500 | 60.41% | Limited |
| Decedent's Trust | 300,000 | 13.07% | Limited |
| QTIP trust-nonexempt | 408,000 | 17.78% | General |
| QTIP trust-exempt | 200,000 | 8.72% | Limited |
| Mr. Prechel | 500 | 0.02% | General |

*Represents the value of property contributed.

The ESN Group Limited Partnership (ESNGLP) was also formed by decedent and Mr. Prechel on January 18, 1991. The following chart indicates the partners, their partnership status, the value of contributed property, and each partner's respective profits and loss percentage.

| Partners | Contributed Property* | Profit & Loss Percentage | General or Limited |
|----------|----------------------|--------------------------|--------------------|
| Revocable trust | $75,000 | 13.04% | Limited |
| Decedent's Trust | 300,000 | 52.17% | General |
| QTIP trust-exempt | 200,000 | 34.79% | Limited |

* Represents the value of property contributed.

Both partnerships were duly organized and validly existing partnerships under the laws of the State of Arizona at decedent's death.

Each partnership's Articles and Certificate of Limited Partnership provided in pertinent part:

7.05 <u>Rights of Unadmitted Assignee</u>. A Person who acquires one or more Units but who is not admitted as a Substituted Limited Partner pursuant to Section 7.06 hereof (1) shall be entitled only to allocations and distributions with respect to such Units in accordance with these Articles, (2) shall have no right to any information or accounting of the affairs of the Partnership, (3) shall not be entitled to inspect the books or records of the Partnership, (4) shall not have any of the rights of a General Partner or a Limited Partner under the Act or these Articles, but (5) shall be subject to the obligations of a Unit Holder under these Articles, including but not limited to those provisions of Articles Seven, Ten and Eleven, to the same extent and in the same manner as any Unit Holder making a Prohibited Transfer.

7.06 <u>Admission of Unit Holders as Partners</u>. Subject to the other provisions of this Article Seven, a transferee of Units may be admitted to the Partnership as a Substituted Limited Partner only upon satisfaction of the conditions set forth below:

(1) All <u>General Partners consent to such admission</u>;

\*     \*     \*     \*     \*     \*     \*

8.01 <u>Termination of General Partners</u>.

\*     \*     \*     \*     \*     \*     \*

(C) Permitted Transfers by General Partners

\*     \*     \*     \*     \*     \*     \*

(2) A transferee of Units from a General Partner hereunder shall be admitted as a General Partner with respect to such Units if, but only if, (a) at the time of such Transfer, such transferee is otherwise a General Partner, or (b) there is one or more General Partners and <u>the admission of such transferee as a General Partner is approved by a majority of the Partners</u>. [Emphasis added.]

Upon decedent's death, all partnership interests in PFLP were distributed to Mr. Prechel, and all partnership interests in ESNGLP were retained by the respective trusts for Ms. Prechel's benefit.

On September 22, 1993, Mr. Prechel, as decedent's personal representative, filed a United States Estate (Generation-Skipping Transfer) Tax Return, Form 706, for decedent's estate. The return included the partnership interests that were held by the revocable trust pursuant to section 2038 and the partnership interests that were held by the QTIP trusts pursuant to section 2044. The partnership interests were discounted based on lack of marketability, lack of control, and other disabilities. The discounts ranged from 50 percent to 65 percent of the net asset

value of the partnerships.  The following chart sets forth the Federal estate tax values of the partnership interests as represented in the United States Estate Tax Return.

| Partnership Interest | Ownership Units | Estate Tax Value | Discount |
|---|---|---|---|
| PFLP in Revocable trust | 1,386,500 | $298,100 | 65% |
| ESNGLP in Revocable trust | 75,000 | 31,900 | 50% |
| PFLP in QTIP trust-nonexempt | 408,000 | 125,300 | 50% |
| PFLP in QTIP trust-exempt | 200,000 | 43,000 | 65% |
| ESNGLP in QTIP trust-exempt | 200,000 | 85,000 | 50% |

On examination, respondent determined that the partnership interests that were held by the revocable trust and the QTIP trusts should be merged for valuation purposes.  Accordingly, respondent determined that the value of the partnership interests in the revocable trust should be increased by $577,300 and that the value of the partnership interests in the QTIP trusts should be increased by $272,404.  Respondent also added $2,500 to decedent's gross estate for a 1992 Federal income tax refund.  The resulting deficiency in Federal estate tax was determined to be $342,688.

## Discussion

Partial summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd.

17 F.3d 965 (7th Cir. 1994).  The facts in this case have been stipulated for purposes of the cross-motions for summary judgment.  Decedent's gross estate includes partnership interests pursuant to sections 2038 and 2044 valued with fractional interest discounts based on lack of marketability and other disabilities.  The first issue is whether the partnership interests that were held by the estate should be valued independently of each other.  The second issue is whether the partnership interests that passed at decedent's death were partnership interests or "assignee" interests.  Both issues present legal questions and are, therefore, appropriate for partial summary judgment.

Issue 1

Section 2031 includes in the decedent's gross estate the value of property described in sections 2033 through 2044.  Under section 2038, a decedent's gross estate includes the value of all property interests transferred by a decedent during the decedent's lifetime, unless for full consideration, if at the decedent's death the enjoyment of such property is subject to any change through a retained power to revoke.  Section 2044 includes in the gross estate the value of all property in which the decedent had a qualified income interest for life and for which a deduction was allowed under section 2056(b)(7) in computing the value of the decedent's predeceased spouse's estate.  Property

included in the decedent's gross estate pursuant to sections 2031 through 2044 is generally included at its fair market value, the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of the relevant facts. Sec. 2031; United States v. Cartwright, 411 U.S. 546, 551 (1973); sec. 20.2031-1(b), Estate Tax Regs.

The partnership interests that were held by the revocable trust are included in decedent's gross estate pursuant to section 2038, and the partnership interests that were held by the QTIP trusts are included in decedent's gross estate pursuant to section 2044. Respondent argues that, in valuing the partnership interest for Federal estate tax purposes, the decedent should be treated as the owner of property included in the estate pursuant to section 2044 and that the respective partnership interests held by the trusts should merge or be aggregated. Accordingly, respondent concludes that decedent's estate should be taxed on an 84.1-percent limited partnership interest in PFLP, a 99.9-percent general partnership interest in PFLP, and a 100-percent limited partnership interest in ESNGLP, rather than on the separate partnership interests owned by each trust.

We rejected respondent's aggregation argument in Estate of Mellinger v. Commissioner, 112 T.C. 26 (1999), filed this date, and we find no reason to reach a different conclusion in this

case.  In <u>Estate of Mellinger</u>, the decedent died owning 2,460,580 shares of stock that were held in her revocable trust.  The stock was included in her estate pursuant to section 2033.  Also included in her taxable estate, pursuant to section 2044, were 2,460,580 shares of the same stock held in a QTIP trust established by the decedent's predeceased spouse.  Respondent argued that the shares should be aggregated and valued as a control block rather than as two separate minority interests.  We rejected that argument stating:

> Respondent has identified nothing in the statute that indicates that Congress intended that result or that QTIP assets should be aggregated with other property in the estate for valuation purposes.  Cf. secs. 267, 318, 544 (indicating aggregation of interests in terms of ownership).  Furthermore, at no time did decedent possess, control, or have any power of disposition over the FOH shares in the QTIP trust.  Cf. secs. 2035, 2036, 2041 (requiring inclusion in the gross estate where decedent had control over the assets at some time during her life).  [<u>Id.</u> at __ (slip op. at 17).]

Respondent, in <u>Estate of Mellinger</u>, also argued that the decedent should be treated as the <u>owner</u> of QTIP property for valuation purposes.  We held that "Neither section 2044 nor the legislative history indicates that decedent should be treated as the owner of QTIP property for this purpose."  <u>Id.</u> at __ (slip op. at 18).  Accordingly, the shares of stock in the trusts were valued as two separate minority interests.  <u>Id.</u> at __ (slip op. at 18); see also <u>Estate of Bonner v. United States</u>, 84 F.3d 196 (5th Cir. 1996).

These principles are equally applicable to the case before us.  Analysis of section 2044 and the accompanying regulations thereunder does not indicate that Congress intended that property interests includable under section 2044 should be merged or aggregated with interests in the same property included in the estate pursuant to section 2038 for purposes of determining Federal estate tax value.  Section 2044 provides only that the value of property in the gross estate shall include property in which the decedent had a qualifying income interest for life and that the inclusion of such property shall be at its fair market value.  Sec. 20.2044-1(d), Estate Tax Regs.  Section 2044(c) treats QTIP property as "passing from the decedent" but does not indicate that the decedent should be treated as the owner of such property for purposes of aggregation.  Thus, the partnership interests included pursuant to section 2038 and section 2044 should be valued separately.

Issue 2

The second issue for decision is whether the interests in the two partnerships passing at death should be valued for Federal estate tax purposes as "assignee" interests or as partnership interests.

The Federal estate tax is a tax on the privilege of transferring property upon one's death.  United States v. Manufacturers Natl. Bank of Detroit, 363 U.S. 194, 198 (1960).

"[T]he property to be valued for estate tax purposes is that which the decedent actually transfers at his death rather than the interest held by the decedent before death, or that held by the legatee after death." Propstra v. United States, 680 F.2d 1248, 1250 (9th Cir. 1982); see also Ahmanson Found. v. United States, 674 F.2d 761, 769 (9th Cir. 1981).

For purposes of determining value, the standard is an objective test using hypothetical buyers and sellers in the marketplace and is not a personalized one that envisions a particular buyer and seller. Estate of Andrews v. Commissioner, 79 T.C. 938, 956 (1982); Kolom v. Commissioner, 71 T.C. 235, 244 (1978), affd. 644 F.2d 1282 (9th Cir. 1981). Respondent argues, however, that, although the valuation standard utilizes a hypothetical buyer, who could not, under the terms of the partnership agreement, purchase a partnership interest, it does not transform the nature of the interest that actually passed at death from partnership interests to assignee interests. Respondent's argument rests on the notion that the partnership interests that were transferred to Mr. Prechel remained partnership interests because he was "automatically" admitted as a general partner by virtue of his already being a partner in both partnerships. In addition, respondent argues that, because the trusts continued to hold some of the partnership interests

after decedent's death, only substituting Ms. Prechel as the
beneficiary, the interests remained partnership interests.

In determining the value of an asset for Federal estate tax
purposes, State law first determines precisely what property is
transferred.  Morgan v. Commissioner, 309 U.S. 78, 80 (1940);
Estate of Bright v. United States, 658 F.2d 999, 1001 (5th Cir.
1981).  After that determination is made, the Federal tax law
takes over to determine how such rights and interests will be
taxed.  United States v. Bess, 357 U.S. 51, 55 (1958).  Thus,
State law must be consulted to determine what property interests
were transferred at a decedent's death.

Under the Arizona Limited Partnership Act, "An assignment
entitles the assignee to receive, to the extent assigned, only
the distribution to which the assignor would be entitled."  Ariz.
Rev. Stat. sec. 29-340 (1991).  A partner in an Arizona limited
partnership cannot, however, confer to an assignee the rights to
exercise the powers of a partner, unless provided otherwise in
the partnership agreement.  Id.  The PFLP and ESNGLP partnership
agreements specify that the assignee of limited partnership
interests in either partnership will become an assignee and not a
substitute limited partner unless, among other things, the
general partners consent to the assignee's admission as a limited
partner.  Accordingly, limited partner status in PFLP and ESNGLP

is conferred on Mr. Prechel and Ms. Prechel only if the general partners consent.

Under the partnership agreements, the assignee of a general partnership interest is a general partner with respect to such assignment if "at the time of such * * * [assignment, the assignee] is otherwise a General Partner".  If the assignee of a general partnership interest is not a general partner, the assignee will become a substitute general partner only if approved by a majority of the partners.  Because Mr. Prechel was already a general partner in PFLP, the 408,000 general partnership units in PFLP assigned to him continued to be a general partnership interest.

Applying the Federal estate tax valuation principles to the interests described above, the limited partnership interests must be valued as "assignee" interests, and the general partnership interest in PFLP distributed to Mr. Prechel must be valued as a general partnership interest.  Determination of whether Mr. Prechel and Ms. Prechel will be treated as limited partners of the respective partnerships can be made only by taking into consideration whether the remaining general partners will consent to their admission as limited partners, subjective factors that cannot be taken into consideration under the objective standard of the hypothetical seller/buyer analysis.  See Propstra v. United States, supra at 1252; Estate of Andrews v. Commissioner,

supra at 956; Kolom v. Commissioner, supra at 244.  Thus, the limited partnership interests received by Mr. Prechel and Ms. Prechel must be valued as assignee interests.

There are, however, no subjective factors to consider when determining whether Mr. Prechel will be a general partner with respect to the general partnership interest assigned to him.  The partnership agreement automatically treats him as a general partner.  Accordingly, the general partnership interest received by Mr. Prechel should be valued as a general partnership interest.  No general partnership interests passed to Ms. Prechel.

Petitioner's motion for partial summary judgment will be granted in part and denied in part, and respondent's motion for partial summary judgment will be granted in part and denied in part.

To reflect the foregoing,

An appropriate order will

be issued.