**ESTATE of Leonard E. WHITLOCK,
Deceased, et al., Cross-Appellants,
Appellees,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Cross-Appellee, Appellant.**

**Nos. 73–1497, 73–1498.**

United States Court of Appeals,
Tenth Circuit.

April 22, 1974.

Rehearing Denied May 22, 1974.

Gary R. Allen, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D. C., with him on the brief), for appellant.

Philip J. Erbacher, Kansas City, Mo. (R. Eugene McGannon, of Hoskins, King, McGannon, Hahn & Hurwitz, Kansas City, Mo., with him on the brief), for appellees.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is an appeal and cross-appeal which concern the taxation of stockholders of a controlled foreign corporation, which was also a foreign personal holding company. The issue centers on the question whether increases in earnings invested in United States property (section 951(a)(1)(B), Int.Rev.Code of 1954) by Whitlock Oil Services, Inc. should be included in taxpayers' gross income. The Commissioner assessed deficiencies based on increases in such earnings so invested. The Tax Court held that the increases should not be included by reason of section 951(d). The opinion of the Tax Court, 59 T.C. 490, and the dissenting opinion, were filed on December 29, 1972.

The taxpayers' cross-appeal raises an issue of the constitutionality of section 951(a), and a limitations question under section 6501(e)(1) of the 1954 Code for one year. The Commissioner appealed on the application made by the Tax Court of section 951(d) to exclude from

the taxayers' gross income, in determining the deficiencies, increases in earnings invested in United States property.

Whitlock Oil Services, Inc. (Oil Services) was a Panamanian corporation. The only stockholders during 1963, 1964, 1965, 1966, and 1967 were the taxayers, or Georgia Whitlock alone after the death of her husband. Joint returns were filed. The stockholders were citizens and residents of the United States.

Oil Services during the time in question was a "controlled foreign corporation" under section 957(a) of the Internal Revenue Code of 1954. For each year except 1963, Oil Services was also a "foreign personal holding company" under section 552(a) of the 1954 Code. It had not been such a holding company before January 1, 1964.

It was stipulated that there was includable in taxpayers' gross income for each of the years 1964 through 1967 stated amounts of undistributed foreign personal holding company income from Oil Services (section 551(b)). Furthermore, it was agreed that Oil Services held investments in "United States property" under section 956(b) of the 1954 Code at the end of each year 1963 through 1967 and the increases each year were established. Under section 956(a) of the Code, the retained earnings and profits of Oil Services at all pertinent times were more than the total of its investment in United States property. Also such earnings and profits accumulated before the end of 1963.

The Commissioner by the deficiency assessments took the position that the yearly increases in earnings invested in United States property by Oil Services were includable in the gross income of the taxpayers under section 951(a)(1)(B) of the 1954 Code.

A divided Tax Court, three judges dissenting, held as to 1964, 1965, and 1967 that taxpayers were not required to include Oil Services' increases in earnings invested in United States property in their gross income for such years by reason of the language of section 951(d)

of the 1954 Code, and held further that Treasury Regulations to the contrary were invalid. (Treasury Regulations on Income Tax, 1954 Code (26 C.F.R.) § 1.951–3).

The Tax Court unanimously upheld the constitutionality of the statute against taxpayers' challenge, and declared that the year 1963 was under the six-year limitation period as an instance of substantial omissions (section 6501(e)(1) of the 1954 Code).

We will consider first the increases in earnings of Oil Services invested in United States property in years when it was a "foreign personal holding company" and also a "controlled foreign corporation." Since, except for 1963, Oil Services was within both definitions, its shareholders came within the two categories in the 1954 Code. These were sections 551–556 and sections 951–964. This litigation centers on the meaning and scope of section 951(d). This section, added by the Revenue Act of 1962 to the provisions relating to controlled foreign corporations, seeks to prevent the imposition of double taxation of stockholders when a foreign corporation is within the two definitions described above as was Oil Services. It reads as follows:

"(d) Coordination With Foreign Personal Holding Company Provisions. —A United States shareholder who, for his taxable year, is subject to tax under section 551(b) (relating to foreign personal holding company income included in gross income of United States shareholders) on income of a controlled foreign corporation shall not be required to include in gross income, for such taxable year, any amount under subsection (a) with respect to such company."

The reference in section 951(d) to section 551(b) relating to foreign personal holding companies is to the provision which requires undistributed income of such a company to be included pro rata in the gross income of its shareholders as a dividend. Section 951(a) describes the amounts to be included in the gross

income of a shareholder of a "controlled foreign corporation." Thus section 951 (d) is the subsection which attempts to relate or coordinate the tax on shareholders of a corporation which is both a personal holding company and a controlled corporation.

Under existing law the earnings from year to year of a foreign personal holding company are taxed to the shareholders, as above indicated. Thus the section 951(a) application is to earnings which accumulated in those years when the controlled foreign corporation was not a foreign personal holding company.

Section 951(a) requires to be included in the gross income of shareholders of controlled foreign corporations several different items. These are, roughly, foreign source income (section 952); provision for separate treatment of withdrawals of dividends, interest, and gains therefrom invested in "less developed countries," which was excluded subpart F income or foreign source income; and for increases in "earnings" invested in United States property (section 951 (a)(1)(B)). There are thus included items of income and the somewhat different category of earnings invested. We are, of course, here concerned with the assessment for increases in earnings invested. This is an item created by the corporate decision to move funds to this country and into investments here. These were accumulated earnings of Oil Services made before 1963.

By express provisions, the computation of increases in earnings invested in United States property excludes earnings attributable to the foreign personal holding company *income* of such company. By section 551(a) amounts taxed to shareholders are as to them considered as dividends, and as to the company they are also so treated to eliminate them from the corporate earnings. Thus there is really no possibility of a second taxation of income previously taxed under the prescribed computations for section 951(a)(1)(B). There is, however, the *possibility of double taxation under section 551(a) and under section 951(a)*

(1)(A) since both may include *income* from a foreign personal holding company. This double taxation is prevented by the express provisions of section 951(d). But does the subsection do more?

The Commissioner argues that a distinction should be made because as to *income* a possibility exists that double taxation of stockholders could take place if the corporation is in both categories, but no such possibility exists as to increases in earnings invested in United States property and income under section 551(a). This distinction, the Commissioner argues, was recognized and provided for in a Treasury Regulation. This Regulation on Income Tax § 1.951–3 was specifically directed to section 951 (a)(1)(A). The text of the regulation is followed by several examples which seek to demonstrate or explain. The regulation is not particularly clear on the problem at hand, but the examples do make the distinction above described. As indicated above, the Tax Court held the regulation to be invalid as contrary to the wording of section 951(d).

The Tax Court, contrary to the argument of the Commissioner, held in substance that if the shareholder was subject to tax under section 551(b) on income he *need not include in his gross income "any amount . . . with respect to such company."* Thus under section 951(a) (1)(B) it held that if the personal holding company's undistributed income was included in the shareholders' gross income, then the increases in United States investments as a controlled foreign corporation need not be included. Thus the reference to "such company" freed the shareholder from tax for increases in corporate investments. This in effect exempts Oil Services' actions in repatriating earnings which are not otherwise taxed, and in circumstances where there is no possibility of double taxation of shareholders. This frees from taxation an event which is of importance in the taxation of controlled foreign corporations. The Commissioner argues that *this repatriation by Oil Services of funds without taxation is thus permitted al-*

though this was one of the events sought to be met by the tax legislation relating to controlled foreign corporations.

Section 951(d) of the Internal Revenue Code of 1954 in the reference to section 551(b) describes it as covering corporate *income*, which it does, and also describes the shareholder as subject to tax on *income* of such corporation. This is a clear reference to income only, and it is corporate income to be included in the shareholders' gross income. This is clearly a device to prevent double taxation for or on "income." However, the wording can be construed, with no difficulty at all, to also immunize the other event included in section 951(a) which would otherwise be included in the shareholders' gross income—the pro rata share of the increase in the corporation's earnings invested in United States property. This event like the "income" events is just as clearly in "subsection (a)." However, it is an event, as indicated above, which cannot give rise to double taxation. It is not an "income" type item of the corporation, and the computations prevent the double tax. Thus there is no apparent explanation why this should also be excluded by section 951(d). The taxpayer has advanced no such explanation which is compatible with the overall purpose of the legislation.

The legislative history is rather extensive, but it really shows no more than the sorting of several possible devices to prevent the postponement of the inclusion of earnings in the shareholders' gross income; to cover the repatriation of earnings, and to select provisions to prevent double taxation when the foreign corporation was both a personal holding company and a controlled foreign corporation. The statute must be construed in the light of these purposes, and to meet the intention of Congress to provide an integrated coverage of the subject without voids or unexplained inconsistent treatment of essentially the same position. There is no indication that shareholders of foreign personal holding companies were to receive favored treatment.

The consideration of the purpose of the statute as a whole; the aspects of double taxation; the details of computation provided as to year by year treatment of income, and the absence of any explanation as to why the shareholders of a corporation in both classifications should receive special consideration contrary to the purpose of the Act, leads us to the conclusion that Regulation § 1.951-3 is a reasonable contemporary construction of section 951(d).

This court has had some fairly recent experience with a similar inconsistency between the wording of a tax statute and the "intent of Congress." *See* United States v. Skelly Oil Co., 394 U.S. 678, 89 S.Ct. 1379, 22 L.Ed.2d 642; Oestereich v. Selective Service Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402; *see also* Perry v. Commerce Loan Co., 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827.

It would serve no useful purpose to reexamine the authorities on the matter of construction by regulations of statutory provisions by the agency charged with the execution of the legislation. These include Bingler v. Johnson, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695; United States v. Correll, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537; Comm'r v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831; Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397. The dissent in the Tax Court treats these authorities and this issue in detail.

The Supreme Court has clearly stated that such a contemporaneous construction by regulation must be followed unless ". . . unreasonable and plainly inconsistent with the revenue statutes." Comm'r v. South Texas Lumber Co., *supra*. We cannot hold that the regulation here concerned is plainly inconsistent with the statute, when read in the light of the overall purpose of the statute, and the obvious need not to permit voids or unexplained exceptions. Again as in Corn Products Co. v. Comm'r, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29, the wording of a tax act must not be applied to defeat the overall purpose of Congress.

*See also* United States v. Correll, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537. We hold that Regulation § 1.951–3 is valid, and the Tax Court must be reversed on this point. Furthermore, the regulation was directed specifically to the problem at hand, and we thus hold that it is here applicable.

■ The Tax Court held the provisions of subpart F (section 951 et seq.) constituted a constitutionally valid exercise of Congressional authority. The taxpayers had contended that the provisions violated the Fifth Amendment, and the provisions relating to direct taxes. As to due process the claim is basically that the Act ignores the separate entity of the corporation. We find no merit in this contention; it has been held otherwise as to corporate accumulated earnings. Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346, as to the "direct tax" argument. The tax here considered is computed in reference to a transaction, United States v. Manufacturers National Bank, 363 U.S. 194, 80 S.Ct. 1103, 4 L.Ed. 2d 1158, an investment in United States property, and an event which came about when the taxpayers controlled the corporation. When the provisions of Article I of the Constitution, the Sixteenth Amendment, Comm'r v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483; Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521; Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108, are considered together, we find no merit to the contention that the increased earnings provision is contrary to the Constitution. We can add little to the analysis by the Tax Court of the direct tax argument and the "separate entity" arguments of the taxpayers, and agree fully therewith. *See also* Garlock, Inc. v. C. I. R., 489 F.2d 197 (2d Cir.).

Likewise we agree with the Tax Court in its conclusion and analysis of the limitations issue, the "clue" problem as to the 1963 income, and refer to its opinion on this point.

In our consideration of section 951(a) (1)(B) above, we have applied it to the earnings of Oil Services accumulated during 1962 and prior years. Section 951 is not limited by its terms to *accumulations of earnings* after 1962. It is, of course, limited to property *acquired* after 1962. This holding is consistent with the treatment of dividends if distributed. We find no basis for any other construction, and no legislative history to suggest it. Section 1248 of the Code, a related provision, contains a limitation but it is applied only to sales of stock in a controlled foreign corporation. Thus the absence of such a specific limitation in section 951(a) becomes significant. The earnings and profits accumulated between 1913 and December 31, 1962, are thus sought to be included.

The decision and judgment of the Tax Court in both cases is reversed as to the application of section 951(d) as above described, and insofar as it voided Treasury Regulation on Income Tax (1954 Code) § 1.951–3 (Coordination of Subpart F with Foreign Personal Holding Company Provisions). The decision of the Tax Court is otherwise affirmed.