856 P.2d 982

**NCR CORPORATION, Protestant–
Appellant,**

v.

**TAXATION AND REVENUE DEPART-
MENT of the State of New Mexico,
Respondent–Appellee.**

**No. 13035.**

Court of Appeals of New Mexico.

May 6, 1993.

Certiorari Denied July 8, 1993.

Curtis W. Schwartz, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Santa Fe, Paul H. Frankel, Walter Hellerstein, Morrison & Foerster, New York City, for protestant-appellant.

Tom Udall, Atty. Gen., Daniel Yohalem, Asst. Atty. Gen., Santa Fe, Bruce J. Fort and Frank D. Katz, Sp. Asst. Attys. Gen., Taxation & Revenue Dept., Santa Fe, for respondent-appellee.

## OPINION

DONNELLY, Judge.

NCR Corporation (NCR) appeals from an administrative decision and order of the State Taxation and Revenue Department (Department), denying NCR's challenge to four separate deficiency assessments of corporate income tax, penalty, and interest. It contends that (1) the Foreign Commerce Clause, Article I, Section 8, Clause 3 of the United States Constitution prohibits New Mexico from imposing a corporate income tax upon NCR's foreign source royalty, interest, and dividend income; (2) the Due Process Clause, Amendment XIV of the United States Constitution prohibits New Mexico from taxing an apportioned share of NCR's Subpart F income; and (3) the Due Process Clauses of the state [1] and federal constitutions require that New Mexico modify its apportionment formula as it relates to NCR. We affirm the decision and order of the administrative hearing officer entered below; we remand, however, for determination of the amount of credits due for taxes previously paid by NCR.

## FACTS

The Department issued corporate income tax assessments against NCR for taxes due in 1981 through 1987, totalling approximately $439,681.80, plus interest and penalties. The assessments principally relate to income earned outside the United States by NCR and its foreign subsidiaries. NCR protested each of the assessments and its challenges were consolidated for hearing before a hearing officer on August 29, 1990.

The parties stipulated, inter alia, that NCR was incorporated in Maryland and maintains its corporate headquarters and principal place of business in Ohio. NCR is engaged in the manufacture of business equipment, computers, and machinery, and sells its products, supplies, and services at wholesale and retail world-wide. It conducts its businesses in foreign countries either directly or through its foreign subsidiaries and branches, through the ownership of stock in foreign subsidiaries, through ownership of patents and license agreements with foreign subsidiaries, and through loan agreements. NCR does not contest New Mexico's taxation of its branch income. The operation of NCR's

---

1. N.M. Const. art. II, § 18 (Repl.Pamp.1992).

foreign subsidiaries and its foreign branches is nearly identical. All significant operating decisions for both branches and subsidiaries are made at NCR's corporate headquarters in the United States. The royalties, interest, and dividends received by NCR from its foreign subsidiaries were treated as gross income of NCR. Either NCR or its foreign subsidiars were subject to tax on the income earned in the host country.

During the years in question, NCR had seventeen manufacturing facilities throughout the world; each was operated either directly by NCR or through a subsidiary. During this same time period, NCR conducted business in all fifty states, including New Mexico. NCR had ten domestic subsidiaries, approximately seventy-five foreign subsidiaries, and eighteen foreign branches. Approximately 70% of all products sold by NCR are manufactured in the United States and shipped overseas. NCR does business essentially through its domestic and foreign subsidiaries operating together as a fully-integrated unitary business and, except for its Japanese subsidiary, NCR owns 100% of the stock of its other foreign subsidiaries.

The income tax assessed by the Department against NCR during the applicable time periods was based upon an apportionment formula utilized by the state and which apportioned a share of NCR's total income as reported to the federal government. To calculate the amount of tax due, the Department took NCR's reported federal taxable income, deducted foreign dividend gross-up, income from United States obligations, and non-business income allocated to other states, and then apportioned NCR's New Mexico income in accordance with the statutory formula specified by the Uniform Division of Income for Tax Purposes Act (UDITPA). NMSA 1978, §§ 7–4–1 to –21 (Repl.Pamp.1990). The Department then imposed an apportioned income tax by taxing NCR's unitary business income.[2]

The tax imposed by the Department, subject to certain deductions, is levied on a percentage basis determined by comparing NCR's New Mexico business income to the remainder of its business. This formula resulted in a tax apportionment factor, which varied depending on the applicable year, of between 0.3307% and 0.2207% of NCR's annual federal taxable income.

Following the administrative hearing, the hearing officer disallowed NCR's protest of each of the tax assessments imposed by the Department, except insofar as NCR protested the inclusion of a portion of its Subpart F income which was previously taxed in New Mexico, and except for allowance of a deduction for previous tax payments made by NCR for the tax years in question.

## I. *Foreign Commerce Clause*

■ NCR contends that the Foreign Commerce Clause of the United States Constitution bars imposition of New Mexico's corporate income tax upon a proportionate share of NCR's corporate income received in the form of royalties, interest, and dividends from its foreign subsidiaries, and which is earned in, and subject to taxation by, foreign countries. In advancing this argument, NCR argues that allocation of · NCR's corporate income to a single situs and apportionment is constitutionally prohibited under the Foreign Commerce Clause, ·and that New Mexico's apportionment formula results in impermissible multiple international taxation and contravenes national policy.

■ NCR asserts that New Mexico's statutory apportionment formula is prohibited under the Foreign Commerce Clause because Section 7–4–10 must be read to require inclusion of its entire property, payroll, and sales of its dividend, royalty, and interest-paying foreign subsidiaries in calculating the denominator of the apportionment factor applied to the taxable portion of its foreign income. Thus, it contends the tax in question is a tax on its foreign subsidiaries. We do not believe the statute or its application in the instant case offends

---

**2.** New Mexico utilizes a hybrid system of corporate income tax reporting. *See Container Corp.*

*v. Franchise Tax Bd.,* 463 U.S. 159, 168, 103 S.Ct. 2933, 2937, 77 L.Ed.2d 545 (1983).

the Foreign Commerce Clause. Reading Sections 7–4–10, –11, –14, and –16 together, in light of the provisions of UDITPA, we think, evinces a clear legislative intent to impose the tax on the property, payroll, and sales of the unitary business of the "taxpayer." In this case the "taxpayer" is NCR, not its foreign subsidiaries. *See Giant Indus. Ariz., Inc. v. Taxation & Revenue Dep't*, 110 N.M. 442, 445, 796 P.2d 1138, 1141 (Ct.App.1990) (fundamental purpose of statutory interpretation is to further legislative intent and purpose).

New Mexico utilizes a three-factor apportionment formula as set forth in UDITPA. A majority of states, including New Mexico, have adopted UDITPA, or a variation of such uniform legislation. *Barclays Bank Int'l, Ltd. v. Franchise Tax Bd.*, 2 Cal.4th 708, 8 Cal.Rptr.2d 31, 34, 829 P.2d 279, 282 (1992) (en banc); *see also* 1 *State Tax Guide* ¶ 10–110, at 1061–63 (Commerce Clearing House, 2d ed. 1991); 4 Zolman Cavitch, *Business Organizations* § 79.04, at 79–29 (1992); *see generally* Larry D. Scheafer, Annotation, *Construction and Application of Uniform Division of Income for Tax Purposes Act*, 8 A.L.R.4th 934 (1981); Uniform Division of Income for Tax Purposes Act, 7A U.L.A. 331 (1985).

As specified in UDITPA, Section 7–4–10, "All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three." Under this statutory formula, the income attributable to the state is determined by multiplying the taxpayer's gross income by a fraction which represents the ratio of sales, payroll, and property located in the state to the total sales, payroll, and property of the corporation.

Relying in part upon the decision in *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), NCR also asserts that the Foreign Commerce Clause precludes the state, even on an apportioned basis, from imposing any tax upon the royalty, interest, and dividend income earned by it from its foreign subsidiaries, because this income has already been taxed on an unapportioned basis by the government of the foreign country in which the income was generated and earned. NCR argues that in *Japan Line*, which involved a challenge of local taxation of foreign, rather than interstate commerce, the Court held that the Foreign Commerce Clause imposed greater restraints upon state taxing authority than those articulated in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), relating to restrictions emanating from the Interstate Commerce Clause. It argues that the hearing officer erred in failing to determine, under the rationale of *Japan Line*, that the taxes assessed fail to satisfy constitutional scrutiny. We reach a different conclusion from that asserted by NCR and find that the tax imposed here survives the six-part test set forth in *Japan Line*.

In *Complete Auto Transit*, the United States Supreme Court observed that where purely *interstate* commerce is involved, a state tax will survive Commerce Clause scrutiny when "the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Id.*, 430 U.S. at 279, 97 S.Ct. at 1079.

In *Japan Line* the Court applied a six-part test, holding that where a taxing authority seeks to tax foreign commerce it must satisfy the four-part inquiry set forth in *Complete Auto Transit* to determine the validity of state or local taxation of interstate commerce and, in addition, must satisfy two additional considerations:

> [F]irst, whether the tax, notwithstanding apportionment, creates a substantial risk of international multiple taxation, and, second, whether the tax prevents the Federal Government from "speaking with one voice when regulating commercial relations with foreign governments." If a state tax contravenes either of these precepts, it is unconstitutional under the Commerce Clause.

*Japan Line*, 441 U.S. at 451, 99 S.Ct. at 1823.

Pointing to the decisions in *Japan Line* and *ASARCO, Inc. v. Idaho State Tax Commission*, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), NCR contends that New Mexico, in seeking to tax the income of a multistate or multinational business, is limited under the Commerce Clause and Foreign Commerce Clause to taxing only the income of such an entity earned within the state. We do not read the authorities relied upon by NCR so restrictively. While it is true that in *ASARCO, Inc.* and *Container Corp.*, the Supreme Court held that under both the Due Process Clause and the Commerce Clause a state may not impose an income tax upon value earned by a taxpayer beyond the state's borders, the Court, in *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 439–40, 100 S.Ct. 1223, 1232–33, 63 L.Ed.2d 510 (1980), recognized that a state may lawfully impose a fairly apportioned income tax upon such taxpayer. The general premise underlying unitary taxation is that the value of a corporation's unitary business is apportionable to a state for taxation if the corporation's operations within the state contribute to the profitability of the entity's overall business. *Id.*

Similarly, the Court in *Container Corp.* observed that multiple taxation of a multinational, world-wide unitary enterprise may, when properly apportioned, survive the restrictions articulated in *Japan Line*. Although the *Japan Line* Court held that a state tax on foreign instrumentalities of commerce may neither impose multiple tax burdens on international commerce nor impair federal uniformity in an area where federal uniformity is essential, in a subsequent decision, *Container Corp.*, the Court declined to declare invalid California's apportioned corporate income tax. *Container Corp.* held that while "[a]llocating income among various taxing jurisdictions bears some resemblance ... to slicing a shadow," *id.*, 463 U.S. at 192, 103 S.Ct. at 2954, nevertheless, it was unwilling to require a state to give up one method of allocation that may at times result in double taxation in favor of another allocation method that may also result in double taxation. *Id.* at 193–96, 103 S.Ct. at 2955–57.

Thus, the *Container Corp.* Court declined to infer that the state's use of unitary taxation violated a clear federal policy requiring uniform state income taxation of foreign commerce. The United States Constitution does not impose any single method of apportionment on a multistate or multinational taxpayer's income. *See Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 445, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940).

The Department disputes NCR's claims that the Supreme Court's decision in *Japan Line* is dispositive of the issue of constitutionality raised here. The Department asserts that the Court's decision in *Japan Line* is inapplicable to the facts of the instant case because *Japan Line* involved a challenge to the taxing authority's imposition of an ad valorem property tax on cargo containers owned by Japanese companies engaged in foreign commerce and which were transported to California ports en route to other places. We agree. Unlike the situation in *Japan Line*, which involved six Japanese shipping companies engaged in the transport of cargo in foreign commerce, and an ad valorem property tax, which was determined to constitute an unlawful restraint on foreign commerce, the present case presents a different factual basis. Here, NCR is domiciled in the United States, engages in business in New Mexico, and the tax in question is an apportioned corporate income tax on NCR's unitary business income.

In contrast to the tax involved here, the tax imposed in *Japan Line* was a tax on a foreign entity, not a domestic corporation. In *Japan Line* several municipalities in California levied ad valorem personal property taxes on cargo containers used by the shipping companies. The cargo containers were taxed at full value in Japan. Moreover, unlike the situation in *Japan Line*, the Court in *Container Corp.* upheld the tax in question, noting that the California net income tax was imposed on the domestic parent of foreign subsidiaries and not upon a foreign entity. *Container Corp.*, 463 U.S. at 195, 103 S.Ct. at 2955.

Does the New Mexico corporate income tax apportionment scheme, as applied in this case, pass constitutional muster against contentions that such tax fails to survive Commerce Clause scrutiny and violates the Foreign Commerce Clause? We conclude that it does and that the basic premise and holding of the Court in *Container Corp.* is controlling here.

The income the Department seeks to tax is derived from NCR's subsidiaries that operate together as a fully-integrated unitary business. *Cf. Kewanee Indus., Inc. v. Reese*, 114 N.M. 784, 788 n. 5, 845 P.2d 1238, 1242 n. 5 (1993). The tax in question is not a tax on any of NCR's foreign subsidiaries; instead, the tax falls upon an apportioned share of NCR's income which it receives in the form of royalties, interest, and dividends from its unitary foreign subsidiaries. The fact that the tax is apportioned in part upon NCR's foreign income sources does not constitute a bar to state taxation. *See Mobil Oil Corp.*, 445 U.S. at 439–40, 100 S.Ct. at 1232–33.

NCR's argument that both the Commerce Clause and the Foreign Commerce Clause of the United States Constitution prohibit New Mexico from imposing its income tax on NCR's royalties, interest, and dividends which were subject to the taxing jurisdiction of foreign countries, has been considered and rejected in several other jurisdictions. *See NCR Corp. v. Commissioner of Revenue*, 438 N.W.2d 86 (Minn.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989); *NCR Corp. v. South Carolina Tax Comm'n*, 304 S.C. 1, 402 S.E.2d 666 (1991); *see also NCR Corp. v. Comptroller of the Treasury, Income Tax Div.*, 313 Md. 118, 544 A.2d .764 (1988). We find these decisions instructive in the instant case.

The Minnesota Supreme Court, in *Commissioner of Revenue*, considered a similar argument by NCR and concluded that the Minnesota unitary business income tax apportionment formula did not violate the Due Process or Foreign Commerce Clauses of the United States Constitution, or result in impermissible multiple taxation.

In *South Carolina Tax Commission* the South Carolina Supreme Court turned aside a similar argument to that raised by NCR in the instant case. In that case, as here, NCR placed great reliance on the Supreme Court's decision in *Japan Line*. The South Carolina court found unpersuasive NCR's claim that the Foreign Commerce Clause precluded the tax commission's inclusion in NCR's total taxable income the royalty and interest income it received from its foreign subsidiaries. In rejecting this argument, the court held:

> [T]he case controlling the situation here is not *Japan Line* in our view, but *Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159 [103 S.Ct. 2933, 77 L.Ed.2d 545] ... (1983). In *Container Corp.* the Court retreated from its broad *Japan Line* rules and in our view restricted *Japan Line* substantially. *Container Corp.* again involved a California tax. This time, however, the tax was an apportioned corporate income tax on Container Corporation, a company headquartered in Illinois but doing business in California as well as other states and countries. California imposed the same three-factor apportionment formula upon Container [C]orporation as was here imposed by the Tax Commission on NCR.

*South Carolina Tax Comm'n*, 402 S.E.2d at 670.

We arrive at a similar result to that reached by the court in *South Carolina Tax Commission* and the Minnesota Supreme Court in *Commissioner of Revenue*, each of which denied related challenges of NCR to the imposition of an apportioned state income tax.

■ In rejecting the arguments advanced above, we have also considered NCR's contention that New Mexico's tax impairs federal uniformity in an area where uniformity is essential and that the imposition of such tax may impede federal policy. We do not agree that the limitations cited by NCR bar the imposition of the tax here in issue. In *Japan Line* the Court held that to withstand scrutiny under the Foreign Commerce Clause a state tax must meet the standards with respect to

**618**

state taxation of interstate commerce enunciated in *Complete Auto Transit* and, additionally, the tax must not give rise to the risk of multiple taxation or prevent the federal government from speaking with one voice when regulating commercial relations with foreign countries. *Japan Line,* 441 U.S. at 453, 99 S.Ct. at 1824; *see also Colgate–Palmolive Co. v. Franchise Tax Bd.,* 10 Cal.App.4th 1768, 13 Cal.Rptr.2d 761, 767 (1992) (unitary state tax held to survive constitutional challenge alleging violation of Foreign Commerce Clause, where tax meets requirements of Interstate Commerce Clause test and tax is not shown to create substantive risk of international taxation and does not impair need for federal uniformity where federal uniformity is essential).

Applying this test to the facts before us, we conclude that NCR's challenges here must fail.[3] Contrary to the contentions of NCR, in the instant case, New Mexico is taxing only an apportioned share of the income of NCR, a domestic corporation, not imposing a tax on tangible property of a foreign corporation. Unlike the situation in *Japan Line,* multiple taxation, although real, is not inevitable, the tax was fairly apportioned under the formula set forth in UDITPA, and the legal incidence of the tax here does not fall on a foreign owner but instead is upon a unitary, domestic entity. Moreover, NCR has failed to establish that the tax here violates the "one voice" standard or implicates foreign policy issues which must be left to the United States government. *Cf. Itel Containers Int'l Corp. v. Huddleston,* — U.S. —, —, 113 S.Ct. 1095, 1103, 122 L.Ed.2d 421, 435 (1993) (Tennessee's sales tax as applied to cargo containers leased by corporation for use in international shipping found not to violate the Foreign Commerce Clause under *Japan Line's* three-part test, and tax did not create substantial risk of multiple taxation implicating foreign commerce concerns).

## II. *Commerce Clause—NCR's Subpart F Income*

■ NCR argues, alternatively, that even if this Court affirms the hearing officer's determination that its foreign source royalties, interest, and dividends can be included in its New Mexico apportionable tax base without impinging upon the limitations of the Foreign Commerce Clause, nevertheless, under the Due Process Clause, the state is precluded from including in its apportionable tax base the Subpart F portion of NCR's foreign source dividends.

NCR argues that its Subpart F income is exempt from taxation by the Department because income may not be taxed until it is actually realized. Thus, it asserts that this principle precludes taxation of a shareholder on income earned by NCR until it is distributed.

■ The Commerce Clause states that "Congress shall have Power … [t]o regulate Commerce with foreign Nations, and among the several States and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause has been recognized as a restriction upon the power of a state to regulate or tax interstate and foreign commerce even in the absence of the enactment of specific congressional legislation. *See Container Corp.,* 463 U.S. at 164, 103 S.Ct. at 2939; *Japan Line,* 441 U.S. at 444, 99 S.Ct. at 1819; *see generally* E.H. Schopler, Annotation, *Validity, Under Federal Constitution, of State Tax On, Or Measured by, Income of Foreign Corporation,* 67 A.L.R.2d 1322 (1959); Scheafer, *supra.* The Foreign Commerce Clause of the United States Constitution also imposes restrictions upon the taxing authority of the states. *See Japan Line,* 441 U.S. at 451, 99 S.Ct. at 1823.

NCR contends that its Subpart F income is not business income under Section 7–4–2(A) and is not apportionable under Section

---

**3.** In *Container Corp.* the Court observed, "[I]f a state tax merely has foreign resonances, but does not implicate foreign affairs, we cannot infer, '[a]bsent some explicit directive from Congress, … that treatment of foreign income at the federal level mandates identical treatment by the States.'" *Id.,* 463 U.S. at 194, 103 S.Ct. at 2955 (quoting *Mobil Oil Corp.,* 445 U.S. at 448, 100 S.Ct. at 1237).

7-4-10. NCR bases its challenge to the inclusion of its Subpart F income on three principal grounds. First, it contends that Subpart F income is hypothetical income, similar to gross-up income which this state does not tax; hence, it contends, Subpart F income is not subject to taxation. Second, NCR argues that the Department is barred from taxing Subpart F income under the Due Process Clause of the United States Constitution. Third, it argues that a portion of its Subpart F income has been previously taxed and New Mexico is precluded by the Equal Protection Clause, the Commerce Clause, and the Due Process Clause of the New Mexico Constitution from taxing this income a second time. We disagree.

In *Estate of Whitlock v. Commissioner of Internal Revenue Service*, 59 T.C. 490 (1972), *aff'd*, 494 F.2d 1297 (10th Cir.1974), the court rejected the argument that Subpart F income is hypothetical. Subpart F of the Internal Revenue Code (IRC), 26 U.S.C. §§ 951-964 (1982), contains a limited exception to the general rule that shareholders are not subject to taxation on the undistributed earnings of their corporations. IRC Section 951(a)(1) provides that United States shareholders of "controlled foreign corporation[s]" are required to report as income their pro rata share of such corporation's undistributed income, consisting of the controlled foreign corporation's "Subpart F income" and its increase in earnings invested in United States property. The effect of such legislation is to provide that the shareholders of controlled foreign corporations shall be treated as if they had received actual dividend distributions from such corporations even though no income has been actually distributed. IRC § 951(a)(2).

Under IRC Section 951(a)(2)(A), a shareholder of a controlled foreign corporation must include in its share of such corporation's Subpart F income that income "which would have been distributed with respect to the stock which such shareholder owns ... if ... it had distributed [a pro rata share of] ... its subpart F income," reduced by certain actual dividend distributions. *Id.*

United States shareholders must also include in his or her pro rata share of the amount of earnings that a controlled foreign corporation invests in United States property for any taxable year "to the extent not excluded from gross income under [other provisions of the Internal Revenue Code]." IRC § 951(a)(1)(B).

NCR also argues that the Due Process Clause of the United States Constitution confines the state's power to tax non-domiciliary corporations engaged in interstate or foreign business to income or property that has its source within the state. *See, e.g., Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 272-73, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197 (1978); *Norfolk & W. Ry. v. Missouri State Tax Comm'n*, 390 U.S. 317, 325, 88 S.Ct. 995, 1000, 19 L.Ed.2d 1201 (1968). We do not find this argument persuasive under the facts existing here. As observed by the United States Supreme Court in *Mobil Oil Corp.*, 445 U.S. at 438, 100 S.Ct. at 1232:

> The argument that the source of the income precludes its taxability runs contrary to precedent. In the past, apportionability has often been challenged by the contention that income earned in one State may not be taxed in another if the source of the income may be ascertained by separate geographical accounting. The Court has rejected that contention so long as the intrastate and extrastate activities formed part of a single unitary business.

In the instant case it is undisputed that there is a substantial flow of goods between NCR and its domestic and foreign subsidiaries and branches, and that NCR conducts its business world-wide through its domestic and foreign subsidiaries as a single, integrated unitary operation. Since NCR conducts part of its unitary business in this state, New Mexico has the right to impose a corporate income tax on an apportioned share of NCR's unitary income. *See F.W. Woolworth Co. v. Taxation & Revenue Dep't*, 458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982) (state may tax corporation income if it arises from subsidiaries whose business is part of the corporation's

unitary business). We have examined each of the arguments and authorities relied upon by NCR, including its challenge on state constitutional grounds, and conclude that because its subsidiaries with Subpart F income remain part of its unitary business and the federal government requires inclusion of NCR's Subpart F income in the corporation's gross income, under the unitary business principle, the state assessments in question here do not violate the United States or New Mexico Constitutions, are fairly apportioned, and tax a fair portion of such income. *See Mobil Oil Corp.*, 445 U.S. at 438, 100 S.Ct. at 1232; *see also Container Corp.*, 463 U.S. at 165–67, 103 S.Ct. at 2940–41; *Comptroller*, 544 A.2d at 768–70; *see generally* William D. Dexter, *Attribution of a Multinational Corporation's Net Income: The Position of Unitary States Regarding Combined Reporting*, 18 Vand.J.Transnat'l L. (1985).

### III. *Validity of Apportionment*

■ NCR's final argument raised on appeal asserts that even if this Court upholds the decision of the hearing officer against its first and second challenges, nevertheless, New Mexico's apportionment method must be modified so as to reflect certain factors which give rise to NCR's foreign source income. In advancing this contention, NCR asserts that New Mexico's apportionment statute, Section 7–4–10, necessitates inclusion of all or a portion of its foreign subsidiaries' expenses in computing NCR's proper formula percentage. NCR also contends that its disputed foreign source income (royalties, interest, and dividends) is neither taxable nor apportionable by New Mexico because (1) that income is earned by NCR in foreign countries where such income is subject to an unapportioned tax and that income is not attributable to New Mexico; and (2) NCR's Subpart F income may not be taxed by New Mexico and may not be subjected to apportionment by the state.

NCR urges this Court to follow the reasoning of Justice Stevens in his dissenting opinion in *Mobil Oil Corp.* which argues that "[u]nless the sales, payroll, and property values connected with the production of income by the payor corporations are added to the denominator of the apportionment formula, the inclusion of earnings attributable to those corporations in the apportionable tax base will inevitably cause [the corporation's] income to be overstated." *Id.*, 445 U.S. at 461, 100 S.Ct. at 1243 (footnote omitted). In resolving this issue, however, we are guided by the rationale of the majority decision which rejected the views set forth in the dissent.

■ In challenging the efficacy of New Mexico's apportionment formula, as applied here, NCR further argues that the formula fails to satisfy the test of fairness set forth in *Container Corp.* In *Container Corp.* the Supreme Court emphasized that two standards must be met in order for an apportionment formula to be fair, e.g., "internal consistency," and "external consistency." *Id.*, 463 U.S. at 169, 103 S.Ct. at 2942. The test of internal consistency is that the formula must be such that if it were applied by every jurisdiction, it would result in a tax which does not exceed the unitary business's income. The requirement that the apportionment formula satisfy external consistency mandates that the factors used in the apportionment scheme "actually reflect a reasonable sense of how income is generated." *Id.*

■ As noted in *Container Corp.*, a taxpayer seeking to invalidate a state's apportionment formula must show by clear and cogent evidence that the income attributed to the state is in fact disproportionate to the business transacted in that sta *Id.*, 463 U.S. at 179, 180–81, 103 S.Ct. at 2948–49. In *South Carolina Tax Commission* the South Carolina Supreme Court, guided, in part, by the Supreme Court's decision in *Container Corp.*, rejected a like contention by NCR that South Carolina's statutory apportionment scheme impermissibly required NCR's foreign subsidiaries' payroll, property, and sales to be included in the denominator of that state's apportionment formula. Similarly, in *Comptroller*, 544 A.2d at 768, the Maryland Court of Appeals noted:

"Under both the Due Process and Commerce Clauses of the [United States] Constitution, a State may not, when imposing an income-based tax, 'tax value earned outside its borders.'" *Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159, 164 [103 S.Ct. 2933, 2939, 77 L.Ed.2d 545] ... (quoting *ASARCO, Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315 [102 S.Ct. 3103, 3108, 73 L.Ed.2d 787] ... (1982)). Nonetheless, "[i]t has long been established that the income of a business operating in interstate commerce is not immune from fairly apportioned state taxation." *Mobil Oil Corp. v. Comm'r of Taxes*, 445 U.S. 425, 436 [100 S.Ct. 1223, 1231, 63 L.Ed.2d 510] ... (1980)....

In order to challenge successfully State apportionment of corporate income, "the taxpayer [must] ... prove 'by clear and cogent evidence' that the income attributed to the State is in fact 'out of all appropriate proportions to the business transacted ... in that State, ... or has led to a grossly distorted result....'" *Container Corp., supra*, 463 U.S. at 170 [103 S.Ct. at 2942] ... (quoting *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 274 [98 S.Ct. 2340, 2345] ... (1978)).

Has NCR established that New Mexico's apportioned income tax upon a share of its unitary income for the years in question results in a grossly distorted result? We hold that it has not. *See id.; see also Tipperary Corp. v. New Mexico Bureau of Revenue*, 93 N.M. 22, 24, 595 P.2d 1212, 1214 (Ct.App.) (taxpayer has duty to present evidence overcoming correctness of assessment), *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (1979); *cf. Crocker Equip. Leasing, Inc. v. Department of Revenue*, 314 Or. 122, 838 P.2d 552, 557 (1992) (en banc) (taxpayer has burden of proving that statutory apportionment formula does not fairly represent taxpayer's business activity). NCR has failed to establish that the method of apportionment utilized by the Department is contrary to law or unfairly applied for the time periods in question. Similarly, we conclude that New Mexico's apportionment statute, Section 7-4-10, and the assessments challenged herein meet the test of fairness specified in *Container Corp.*, and do not violate the Due Process and Commerce Clauses of the United States Constitution or the Due Process Clause of the New Mexico Constitution. N.M. Const. art. II, § 18 (Repl.Pamp.1992). Based upon the record before us, however, we note that the hearing officer found that NCR is entitled to credits for income taxes previously paid by it for certain of the years in question. Since a portion of NCR's Subpart F income was previously taxed for the tax years 1978 through 1980, we agree that NCR is entitled to an adjustment of the tax assessment. Neither NCR nor the Department has contested this portion of the hearing officer's ruling.

*CONCLUSION*

We affirm the decision and order entered below. We remand, however, for determination by the hearing officer of the amount of the allowable adjustment from the additional taxes imposed, because of NCR's previous payment of taxes for certain of the years in question.

IT IS SO ORDERED.

ALARID and CHAVEZ, JJ., concur.