IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2023-NMCA-064**

**Filing Date: June 22, 2023**

**No. A-1-CA-38585**

**UNITED PARCEL SERVICE INC. (OHIO)**
**& AFFILIATES,**

> Protestant-Appellee,

v.

**NEW MEXICO TAXATION &**
**REVENUE DEPARTMENT,**

> Respondent-Appellant,

**IN THE MATTER OF THE PROTEST**
**OF ASSESSMENT ISSUED UNDER**
**LETTER ID NO. L1388538320.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Brian VanDenzen, Chief Hearing Officer**

Joe Lennihan
Santa Fe, NM

for Appellee

Raúl Torrez, Attorney General
Peter Breen, Special Assistant Attorney General
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

**{1}** The New Mexico Department of Taxation and Revenue appeals from the decision of the Administrative Hearing Officer (AHO) abating the Department's assessment of corporate income taxes due for tax years 2007-2009 by United Parcel Service, Inc. (Ohio) & Affiliates (collectively, Taxpayer). In this tax protest, Taxpayer

challenged the use of the Department's special multistate trucking apportionment regulation, 3.5.19.15 NMAC, to calculate the portion of Taxpayer's multistate sales revenue attributable to Taxpayer's New Mexico business operations. The AHO found that Taxpayer established by clear and cogent evidence that the Department's use of the special mileage formula in 3.5.19.15 NMAC to determine New Mexico's share of Taxpayer's multistate revenue for income tax purposes resulted in gross distortion of Taxpayer's actual business activities in New Mexico, contrary to the fair apportionment requirement of the Commerce Clause of the United States Constitution, U.S. Const., art. 1, § 8, cl. 3, a requirement adopted by statute, *see* NMSA 1978,§ 7-4-19 (1986) of New Mexico's Uniform Division of Income for Tax Purposes Act (UDIPTA), NMSA 1978, §§ 7-4-1 to -21 (1965, as amended through 2020). Finding that Taxpayer was entitled to equitable apportionment and that the state-to-state volume method proposed by Taxpayer is reasonable, the AHO allowed Taxpayer to use its state-to-state volume method to calculate the sales revenue properly apportioned to New Mexico for the tax years at issue. The Department appealed, claiming errors in the AHO's admission of evidence and the AHO's application of the law governing the apportionment of the revenue of a multistate trucking company for income tax purposes. Finding no error, we affirm.

**DISCUSSION**

**{2}**     In 3.5.19.15 of the New Mexico Administration Code, the Department sets forth special rules for apportioning income for interstate trucking companies using property, payroll, and sales factors. The regulation apportions the sales (revenue) of "trucking companies" by dividing the miles traveled in New Mexico by the total miles traveled by movements of shipments to their destination, and then by applying that percentage to the company's total revenue. *See* 3.5.19.15(D)(4) NMAC. There is no dispute regarding the property or payroll factors included in 3.5.19.15(D)(2), (3) NMAC and relied on in New Mexico's three-part test for apportioning income. The sole dispute in this protest concerns the revenue factor. UDITPA provides that if this apportionment formula does not "fairly represent the extent of the taxpayer's business activity" in New Mexico, the taxpayer may seek "the employment of any other method to effectuate the equitable allocation and apportionment of the taxpayer's income." Section 7-4-19(D). Taxpayer's proposed method may only be accepted by the AHO if it is shown to be a "reasonable . . . method to effectuate an equitable allocation and apportionment of the taxpayer's income." *See id.*; *see Kmart Props., Inc. v. N.M. Tax'n & Revenue Dep't*, 2006-NMCA-026, ¶¶ 48-51, 139 N.M. 177, 131 P.3d 27, *rev'd on other grounds*, 2006-NMSC-006, 139 N.M. 172, 131 P.3d 22*.* In this proceeding, the AHO concluded that Taxpayer established by "clear and cogent" evidence that the Department's special trucking rule is "in fact out of all appropriate portion to the business [Taxpayer transacts in New Mexico], or has led to a grossly distorted result." *NCR Corp. v. N.M. Tax'n & Revenue Dep't*, 1993-NMCA-060, ¶ 38, 115 N.M. 612, 856 P.2d 982 (omissions, internal quotation marks, and citation omitted). The AHO also concluded that Taxpayer's state-to-state volume method was a reasonable method of allocating Taxpayer's revenue, and ordered its adoption for the tax years at issue.

**{3}**     The Department raises three issues on appeal: (1) the AHO erred in admitting into evidence a 1988-1990 "closing agreement," a type of settlement agreement between the Department and Taxpayer, and according to the Department, prejudiced the Department by treating it as a "filing agreement," applicable to future years; (2) the AHO erred in allowing a Taxpayer to challenge a method of calculating the revenue of interstate trucking companies that has been found constitutional by the United States Supreme Court; and (3) Taxpayer failed to establish with the reliable testimony of a qualified expert the statistical validity—"construct validity"—of Taxpayer's proposed alternative apportionment method. We address each of these issues in turn.

## I.     The AHO's Admission of the Closing Agreement Into Evidence Was Not Error

**{4}**     The Department first argues that the AHO's admission into evidence of its closing agreement with Taxpayer for tax years 1988-1990 is reversible error. We do not agree.

**{5}**     A "closing agreement" is an agreement between a taxpayer and the Department that settles a dispute about the amount of tax due for a particular tax year. *See* NMSA 1978, § 7-1-20 (1995). Such agreements are settlement agreements and, as such, are not dispositive of any issues other than the dispute about the amount due for the tax year addressed in the closing agreement. In other words, a closing agreement does not commit the Department to accept the compromise reached in settlement of a particular assessment or claim for future tax years. *See* § 7-1-20(D).

**{6}**     The Department argues that the AHO erred in admitting the closing agreement entered between Taxpayer and the Department for 1988-1990 based in part on a paragraph in that agreement that provides that "[n]o part of this agreement shall be used by either party for any purpose unrelated to the enforcement of this agreement." The Department also challenges the AHO's procedural rulings, objecting to what it claims was a lack of opportunity to make its evidentiary arguments.

**{7}**     Assuming, without deciding, that the AHO's admission of the closing agreement into evidence was error, we are not persuaded that its admission prejudiced the Department. *See In re Petition for a Hearing on the Merits Regarding Air Quality Permit No. 3135*, 2017-NMCA-011, ¶ 19, 388 P.3d 287 ("This Court . . . has accepted as a general proposition that unless the party challenging an agency's violation of procedural rules or regulations can demonstrate prejudice, we will not reverse an agency decision that would have been the same in the absence of the violation."). We explain.

**{8}**     The Department's argument about how it was prejudiced focuses on what it claims is the AHO's use of the closing agreement as a substitute for a filing agreement. A "filing agreement" is a binding agreement entered into by a taxpayer with the Department, authorizing a taxpayer to modify its method of accounting for the current tax year and for future tax years. *See* NMSA 1978, § 7-1-10(C) (2007) (describing filing agreements) and UDITPA § 7-4-19 (allowing filing agreements to be used to resolve disputes about the method of apportioning a company's income). Had the AHO treated

the closing agreement, settling a dispute about the amount of taxes for the specific tax years 1988-1990, *see* § 7-1-20 (describing closing agreements), as a filing agreement that approved Taxpayer's use of its state-to-state volume method to apportion its multistate sales revenue for all future tax years, as the Department argues, we would agree that the admission of the agreement for this purpose was prejudicial. The Department's claim that the AHO treated the closing agreement as a substitute for a filing agreement, however, is contradicted by the express terms of the AHO's decision. The AHO explains the limited purposes for the admission of the closing agreement. To begin, the AHO specifically acknowledges that "the closing agreement is not dispositive of any issues other than for the period of which it applies." The AHO then explains that the closing agreement was admitted into evidence as relevant to show the origins of the state-to-state volume method proposed by Taxpayer. The AHO relies on the closing agreement as part of the history of the development and use of the state-by-state volume method by Taxpayer, history that the AHO finds relevant to rebut the Department's argument that Taxpayer simply made up the state-to-state volume method without any foundation. The AHO also finds the agreement would have been relevant to whether a civil negligence penalty should be assessed against Taxpayer based on a lack of good faith had the Department prevailed on the merits of its assessment.

**{9}** The Department has not persuaded us that the admission of the closing agreement for the purposes cited by the AHO affected the result of this protest in any way. Importantly, the closing agreement was one piece of evidence among many relied on by the AHO in evaluating the background and development of the Taxpayer's state-to-state volume method. The AHO also relied on: (1) an audit by the Multi-State Tax Commission, approving of Taxpayer's use of the state-to-state volume method for tax years 1988-1990; (2) the testimony of Taxpayer's state tax director, W. Richard Bishop, confirming that Taxpayer had used this method of apportioning its sales for income tax purposes in New Mexico since at least 1988; (3) a decision of the Supreme Court of Montana, *Montana Dep't of Revenue v. United Parcel Serv., Inc.*, 830 P.2d 1259 (Mont. 1992), approving Taxpayer's use of its state-to-state volume method, rather than Montana's mileage method, to apportion its sales to Montana for income tax purposes; (4) the Department's approval of the state-to-state volume method for the tax years 1997-2000; and (5) Taxpayer's extensive evidence about its business operations in New Mexico and how the state-to-state volume method apportions sales revenue to New Mexico consistent with its business model.

**{10}** Given the limited purpose for which the AHO admitted the 1988-1990 closing agreement and the extensive and varied evidence in addition to the closing agreement supporting the AHO's conclusion that the state-to-state volume method was a reasonable method, we are not persuaded that the admission of this agreement prejudiced the Department. We, therefore, find no error in its admission.

**II.    Taxpayer Is Permitted to Challenge the Application of the Department's Special Mileage Method of Apportioning Multistate Sales Revenue to Its**

**Business Even Though the Special Mileage Method Has Been Found Constitutional**

**{11}** The Department next contends that because its special mileage formula for apportioning the income of Taxpayer for state corporate tax purposes has been found to be a constitutional method of apportioning the revenue of interstate carriers, the AHO erred as a matter of law in refusing to apply the Department's formula to Taxpayer. The Department insists that it is not challenging the sufficiency of the evidence supporting the AHO's findings of fact but, instead, is presenting a question of law about the application of United States Supreme Court precedent holding that a mileage formula is constitutional as applied to interstate carriers. We understand the Department to argue that, because a mileage-based apportionment factor for multistate transportation companies has been accepted as constitutional by the United States Supreme Court, the question raised by Taxpayer has been conclusively decided as a matter of law and cannot be challenged based on evidence concerning Taxpayer's specific business model.

**{12}** We agree with the Department that its special mileage regulation is constitutional and in compliance with UDITPA as applied to most multistate trucking companies and other interstate transportation carriers. The Department cites *Pullmans Palace Car Co. v. Pennsylvania*, 141 U.S. 18 (1891) (upholding taxation of railroad cars apportioned by the amount of mileage incurred with the state by each railroad car under the Commerce Clause) and *Ott v. Mississippi Barge Line*, 336 U.S. 169 (1949) (apportioning tax against barges carrying goods interstate using a mileage-based formula), among other tax decisions, in support of its argument.

**{13}** The Department, however, misconstrues the issue at the heart of this protest. In addition to finding the mileage method generally appropriate for most interstate carriers, the United States Supreme Court has recognized that one size may not fit all and that a company with an unusual business model must be permitted to challenge the fairness of applying the general formula to its business operations. *See Hans Rees' Sons, Inc. v. North Carolina*, 283 U. S. 123, 125-26, 135 (1931) (providing that when the application of a formula for apportionment "operated unreasonably and arbitrarily," a modification in the application of that formula in the particular instance is required by the Commerce Clause).

**{14}** To protect against unlawful and inequitable apportionment of the income of a corporation using an unusual business model, UDITPA, following the federal courts' constitutional decisions, provides that a corporate taxpayer can challenge the application of a statutory or regulatory formula to its business by presenting evidence that the application of the formula to its operations results in an unfair representation of the taxpayer's business activities in New Mexico. *See* § 7-4-19; *see also Kmart Properties, Inc.*, 2006-NMCA-026, ¶ 51 (upholding a challenge to the Department's formula when the party seeking to depart from the formula carries its burden of persuasion with substantial evidence that the formula distorts the reality of the taxpayer's state business activity).

**{15}** Neither Taxpayer nor the Department has challenged on appeal the AHO's requirement that Taxpayer make this showing by clear and cogent evidence, so we assume that burden is correct. Section 7-4-19 provides that, if the taxpayer carries its burden, the taxpayer may demand, or the Department may require, "the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income," so long as the alternative method is "reasonable." Section 7-4-19(D).

**{16}** Taxpayer introduced evidence at the protest hearing showing that its business operations largely did not include the use of New Mexico's highways to transport packages through to other states, the primary activity measured by the special mileage rule. *See* 3.5.19.15 NMAC. Taxpayer explained that it uses an extensive New Mexico workforce located in centers or hubs in multiple locations in the state, who sort, distribute, and deliver or pick up packages having a connection to New Mexico. Taxpayer credits these operations as the source of its New Mexico revenue, attributing only thirteen percent of its income to transportation by motor vehicle, and explaining that almost all of that transportation is to and from its hubs within New Mexico.

**{17}** Taxpayer contended at the protest hearing and contends again on appeal that the Department's argument that the state-to-state volume method does not account for the transportation of packages destined for other states on our highways, and that therefore, the special mileage method is the only appropriate method as a matter of law, confuses Taxpayer with UPS Freight, a separate company, which is engaged in interstate shipment on New Mexico highways and, which pays New Mexico income tax based on the Department's special mileage formula. The AHO's findings of fact agree with Taxpayer and distinguish the operating model of UPS Freight from that of Taxpayer.

**{18}** In this protest, Taxpayer presented two days of testimony of its managers and tax accountants and introduced into evidence eighty-three exhibits, totaling more than three thousand pages, explaining how Taxpayer's business operates and, in particular, how its business model differs from that of other multistate trucking companies. The AHO adopted findings of fact describing Taxpayer's manner of operating its business. In sixty-two pages of findings, conclusions, and discussion the AHO finds, by clear and cogent evidence, that the Department's mileage method "resulted in gross distortion," that application of the special rules for apportionment of trucking companies did not fairly represent the true extent of Taxpayer's New Mexico business activities, and that the alternative method of apportionment employed is reasonable.

**{19}** As already noted, the Department has not challenged any of the AHO findings of fact in this appeal. Our review of the record shows that the findings are supported by substantial evidence in the record justifying departing from the Department's method of apportionment. We find no error in the AHO's application of the law to the unchallenged findings of fact.

### III. Taxpayer Is Not Required To Validate Its Approach With Expert Testimony on "Construct Validity"

**{20}**   The Department's final claim is that the AHO erred in failing to require Taxpayer to validate its state-by-state volume method with expert testimony establishing what the Department calls "construct validity." According to the Department, construct validity must be established by the testimony of an expert who confirms with statistical analysis that the apportionment formula proposed by Taxpayer "actually reflect[s] a reasonable sense of how [Taxpayer's] income is generated." The Department relies on the United States Supreme Court's decision in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999), to support its argument.

**{21}**   Because whether expert testimony is required is a question of law, our review is de novo. *See State v. Torres*, 1999-NMSC-010, ¶ 28, 127 N.M. 20, 976 P.2d 20 ("[T]he threshold question of whether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal.").

**{22}**   *Kumho* holds that Federal Rule of Evidence 702 requires that federal courts apply a modified version of the United States Supreme Court's *Daubert* requirements[1] to the testimony of an expert, even if the expertise involved is technical rather than scientific. *Kumho Tire Co.*, 526 U.S. at 141-42, 158. Although the Department concedes that New Mexico has not adopted *Kumho*,[2] and although no witness offered expert testimony of any sort, the Department nonetheless relies on *Kumho* to argue that Taxpayer was required to present expert testimony validating its method of apportioning income. We do not agree.

**{23}**   Even assuming *Kumho* applied to expert testimony in New Mexico, the Department has failed to show the necessity of expert testimony for Taxpayer to carry its burden of first rebutting the presumption of the correctness of the Department's assessment and then proving, by clear and cogent evidence, that the Department's apportionment formula does not fairly represent its business activity. The evidence presented by Taxpayer was the testimony of Taxpayer's managers, individuals with personal knowledge of the details of Taxpayer's business operations and the sources of its income. It is precisely this practical information about the operation of a taxpayer's business that is required to show that the factors used in the apportionment method proposed by the taxpayer "actually reflect a reasonable sense of how income is generated." *NCR Corp.*, 1993-NMCA-060, ¶ 37 (internal quotation marks and citation omitted). Once again, we note that the Department does not challenge the AHO's findings of fact as not supported by substantial clear and cogent evidence in the record.

---

1*See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (requiring the trial judge to act as the gatekeeper for the admission of scientific expert evidence, testing its reliability and usefulness before admitting it into evidence).
2*See Banks v. IMC Kalium Carlsbad Potash Co.*, 2003-NMSC-026, ¶ 19, 134 N.M. 421, 77 P.3d 1014 (noting that after *Kumho Tire Co.*, we apply *Daubert* "somewhat differently than do the federal courts").

We, therefore, see no error in the AHO's conclusion that expert testimony was not required.

**CONCLUSION**

**{24}**   Not persuaded by the Department's arguments, we affirm the decision of the AHO resolving this protest in Taxpayer's favor.

**{25}   IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**KATHERINE A. WRAY, Judge**